COLLINSON, Senior District Judge.
 

 This is an appeal from a judgment of the United States District Court for the Western District of Arkansas
 
 [1]
 
 which affirmed an order of the bankruptcy court
 
 [2]
 
 denying a discharge in bankruptcy to the appellant-debtor (hereinafter the “Debtor”) under the provisions of 11 U.S.C. § 727(a)(2). The case concerns several adversary proceedings brought against the Debtor by the appellee-trustee (hereinafter the “Trustee”) of the Debtor’s estate. The appeal brings into question the res judicata or collateral estop-pel effects of a bankruptcy court proceeding to set aside fraudulent transfers on a later bankruptcy court proceeding concerning the Debtor’s discharge.
 

 The Debtor filed a voluntary petition in bankruptcy on March 6, 1980. Within a few months the Trustee appointed to rep
 
 *1375
 
 resent the Debtors estate discovered that the Debtor had made several questionable property transfers in the preceding year. On May 12, 1980, the Trustee filed a complaint to cancel a deed as a fraudulent conveyance under the provisions of 11 U.S.C. § 548, alleging that the Debtor had transferred forty acres of real estate to his mother. Both the Debtor and his mother were named as defendants.
 

 On or about June 1, 1980, the Trustee filed another complaint for an order to turn over property and to set aside fraudulent conveyances, also pursuant to 11 U.S.C. § 548. Count I of this complaint involved the Debtor’s transfer of a boat, motor and trailer to his girlfriend; Count II involved transfers of money to the Debtor’s aunt and uncle; Count III involved money transfers to the Debtor’s father; Count IV involved a transfer of money to the Debtor’s mother; Count V involved a transfer of money to the Debtor’s brother; and Count VI involved forty-one withdrawals from the bank account of the Debtor’s business. The Debtor and the alleged transferees were named as defendants.
 

 In June 1980, the bankruptcy court held a hearing on the complaint concerning the forty-acre transfer to the Debtor’s mother. The Trustee, the Debtor and an attorney representing both the Debtor and his mother appeared at the hearing and presented evidence. In its order of September 15, 1980, the bankruptcy court made findings of fact that the Debtor had transferred the real property to his mother, that at the time of the transfer he received less than a reasonably equivalent value in exchange, and that he intended to incur and believed that he would incur debts that would be beyond his ability to pay as they matured. On the basis of these facts, the court concluded that the conveyance was a constructively fraudulent transfer as defined by 11 U.S.C. § 548(a)(2)(A), (B)(iii), and the Debtor’s mother was ordered to convey the property to the Trustee.
 

 A settlement was reached among the Trustee, the Debtor and the transferees with regard to the claims involved in the six-count complaint. In orders dated October 27, 1980, and November 19, 1980, the bankruptcy court approved the compromise settlements; Counts I, II and IV were dismissed without prejudice and Counts III, V and VI were dismissed with prejudice.
 

 On January 9, 1981, the Trustee initiated a proceeding under 11 U.S.C. § 727 objecting to the Debtor’s discharge in bankruptcy on the grounds that the Debtor transferred and concealed property with the intent to hinder, delay and defraud his creditors and that the Debtor failed to explain satisfactorily a substantial loss and deficiency of assets to meet his liabilities. The Trustee later amended his complaint to include as proof of the Debtor’s actual intent to defraud his creditors the specific allegations that the Debtor transferred money to his aunt and uncle and to his mother, that he wrongfully withdrew assets of the bankrupt estate and that he conveyed forty acres of real estate to his mother. The above conveyances refer to the same transactions involved in the Trustee’s first complaint to set aside fraudulent conveyances and Counts II, IV and VI of the second complaint.
 

 In response to this complaint under § 727, the Debtor raised the affirmative defenses of res judicata and collateral es-toppel, arguing that the decision and dismissals in the previous § 548 proceedings concerning fraudulent transfers precluded a later suit by the Trustee objecting to the Debtor’s discharge based on those same transfers.
 

 The bankruptcy court held that the principles of res judicata and collateral estoppel did not apply in this situation. The court also concluded, after the presentation of evidence including the testimony of the Debtor, that within one year prior to the filing of his bankruptcy petition, the Debtor had transferred property to himself and others with the intent to hinder, delay or defraud his creditors in violation of 11 U.S.C. § 727(a)(2). The Debtor’s discharge was therefore denied.
 

 Although the district court did not agree with the bankruptcy court’s determination
 
 *1376
 
 that the doctrines of res judicata and collateral estoppel were inapplicable under these facts, the district court affirmed the denial of the Debtor’s discharge on other grounds. In the district court’s view, because the § 548 proceeding to set aside the real estate transfer to the Debtor’s mother had been decided adversely to the Debtor, the Trustee could rely on this determination as collateral estoppel in the later proceeding objecting to the Debtor’s discharge under § 727. The Debtor appeals.
 

 Although the parties did not distinguish between the concepts of collateral estoppel and res judicata in their briefs, we cannot properly analyze the issues involved in this appeal without recognizing the critical differences between them.
 

 Under the doctrine of collateral estoppel, four criteria must be met before a determination is conclusive in a subsequent proceeding: (1) the issue sought to be precluded must be the same as that involved in the prior litigation; (2) that issue must have been actually litigated; (3) it must have been determined by a valid and final judgment; and (4) the determination must have been essential to the judgment.
 
 In re Piper Aircraft Distribution System Antitrust Litigation,
 
 551 F.2d 213 (8th Cir.1977). The doctrine of res judicata bars a later suit when (1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) both suits involved the same cause of action; and (4) both suits involved the same parties or their privies.
 
 Ward v. Arkansas State Police,
 
 653 F.2d 346 (8th Cir.1981). Thus, the application of collateral estoppel or issue preclusion is limited to those matters previously at issue which were directly and necessarily adjudicated.
 
 Montana v. United States,
 
 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979). In contrast, res judica-ta or claim preclusion bars the relitigation of issues which were actually litigated or which
 
 could
 
 have been litigated in the first suit.
 
 Federated Department Stores v. Moitie,
 
 452 U.S. 394, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981);
 
 Allen v. McCurry,
 
 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). However, both doctrines are applied only when the party against whom the earlier decision is being asserted had a “full and fair opportunity” to litigate the issue in question.
 
 Kremer v. Chemical Construction Corp.,
 
 456 U.S. 461, 481 n. 22, 102 S.Ct. 1883, 1897 n. 22, 72 L.Ed.2d 262 (1982).
 

 Applying these general principles to the facts before us, it is clear that the concept of collateral estoppel is no bar to the Trustee’s suit to block the Debtor’s discharge.
 

 Under 11 U.S.C. § 548(a), the Trustee is given authority to avoid transfers made by the Debtor within one year before the date of the filing of the bankruptcy petition on the ground of actual fraud or on the ground of constructive fraud. Subsection (a)(1) of § 548 sets out the ground of actual fraud and subsection (a)(2) sets out the ground of constructive fraud.
 
 [3]
 

 On the other hand, in order to deny a bankrupt's discharge under 11 U.S.C. § 727(a)(2), the Trustee must establish that the property was transferred with actual intent to hinder, delay or defraud creditors.
 
 *1377
 
 Constructive intent cannot be the basis for the denial of a discharge in bankruptcy.
 
 [4]
 

 The intentional fraud issue, central to the proceeding to prevent the Debtor’s discharge, was never decided by the bankruptcy court in the suit to set aside property transfers. Most of the claims were settled and dismissed. A hearing was held on the question of the forty-acre transfer after which the bankruptcy court determined that the transfer was a constructively fraudulent conveyance and therefore voidable. The court made no determination that the Debtor intended or did not intend to defraud his creditors. The doctrine of collateral estoppel at most could prevent the Trustee from relitigating in the discharge hearing those matters decided in the earlier hearing. The court was not precluded, under principles of collateral estoppel, from considering and deciding an issue never before resolved. Therefore, the Debtor’s attempt to invoke collateral estoppel is inappropriate under these facts.
 

 The Debtor also contends that the doctrine of res judicata, which precludes the relitigation of issues that could have been litigated, precluded the bankruptcy court from considering the nature of the transactions previously involved in the § 548 proceeding as a basis for the denial of the Debtor’s discharge. In considering whether the principle of res judicata is applicable, we are guided by the decision of
 
 Brown v. Felsen,
 
 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), in which the Supreme Court held that a bankruptcy court was not barred by the doctrine of res judicata from inquiring into the nature of a debt of the bankrupt in order to determine the dis-chargeability of the debt.
 

 In
 
 Felsen,
 
 the parties had stipulated to judgment in a state court proceeding in which the debtor’s debt to the creditor was reduced to judgment. The issue of misrepresentation had been raised in the pleadings but the stipulation did not indicate whether or not the debtor had committed fraud. When the debtor later filed a petition in bankruptcy, the creditor sought to establish that the debt to him was not dischargeable. The bankrupt argued that res judicata barred relitigation of the nature of the debt because it was a matter that could have been decided in the prior state court judgment. The bankruptcy court therefore confined its consideration to the prior state court record and held that the debt was dischargeable. The district court and appellate courts affirmed. The Supreme Court reversed and refused to apply res judicata to bar the bankruptcy court from considering evidence extrinsic to the state court judgment.
 

 Among other reasons for its decision, the court noted that the issues relevant to the dischargeability proceeding were largely immaterial to the state court action; therefore, applying res judicata would force the dischargeability questions to be tried in state court at a time when they were not directly in issue and neither party had a full incentive to litigate them. In the present case, applying res judicata would also force the dischargeability issue of intentional fraud to be decided in the earlier proceeding to set aside transfers. As noted previously, to establish his right to set aside transfers, the trustee must only prove constructive fraud. Therefore, there is little motivation on the part of the trustee to take the litigation further. Likewise, the debtor has little incentive to prove that he is not guilty of fraud when such proof would have no effect on the question of constructive fraud and the ultimate result of voiding the transfers. Therefore, neither party is fully motivated to litigate the
 
 *1378
 
 fraud issue at this stage of the bankruptcy proceedings. Under the reasoning of
 
 Fel-sen
 
 this factor militates against the application of res judicata.
 

 In the
 
 Felsen
 
 ease, the Supreme Court also reasoned that Congress intended to commit all questions regarding discharge-ability to the bankruptcy court and this intent would be thwarted by forcing the dischargeability questions to be tried in the earlier state court action. In this case, forcing consolidation of claims relating to voidable transfers and claims relating to the debtor’s discharge would also thwart legislative intent to permit the trustee to litigate these claims separately.
 

 A trustee may file a § 548 complaint to set aside fraudulent conveyances at any time after he is appointed to represent the debtor’s estate. In contrast, under Bankruptcy Rule 404, the time for filing a complaint objecting to the debtor’s discharge is fixed by the court, and the creditors and trustee are generally given at least thirty days notice of the date fixed. In addition, the complaint objecting to discharge cannot be filed prior to the first meeting of creditors. Thus, the Bankruptcy Act does not require that an action to avoid property transfers and an action to object to the debtor’s discharge be brought together. Indeed, they may not be sought simultaneously when a § 548 proceeding is commenced prior to the first meeting of creditors.
 

 The differing time requirements are justified by the differing purposes served by each proceeding. Recovery of property pursuant to § 548 is intended to insure fairness to the creditors in the distribution of the assets of the bankrupt’s estate. As a fiduciary of the estate, the trustee has a duty to avoid such transfers if to do so would benefit the estate and it is usually advisable for the trustee to act quickly. By waiting, the trustee is merely risking the loss of his ability to trace the property and the transferees.
 

 In contrast, a proceeding under § 727 is an attempt to deny the debtor the benefits of a discharge based on his misconduct. Quick action by the trustee on this action is not needed or often possible. To develop the greater proof required in § 727 actions as compared to § 548 actions may require more investigation by the trustee. If res judicata forced the claims to be brought together or forever barred, the trustee might be compelled to choose between the claims: if he acted quickly to recover property transfers for the benefit of the credit community, he may be forced to forego opposition to the debtor's discharge due to a lack of evidence at this stage in the bankruptcy proceedings; but if the trustee took time to gather proof of actual intent to defraud creditors, the property and the transferees may slip from his reach.
 

 In this case the Debtor’s petition in bankruptcy was filed on March 6, 1980. The Trustee properly took immediate steps to recover property transferred without consideration in the preceding year. (The complaints under § 548 were filed on May 12, 1980, and June 1, 1980.) At this stage of the proceedings the Trustee accomplished all that he intended: he recovered the forty acres of real estate from the Debtor’s mother, which was determined to be a constructively fraudulent conveyance and he entered into settlements with regard to the remainder of the claims. Approximately six months later the Trustee finished his investigation and filed an opposition to the Debtor’s discharge based on the fraudulent nature of the transfers. This chronology of events conforms to that envisioned by the Bankruptcy Act. To apply res judicata to bypass the further hearing under § 727 would defeat that statutory scheme which permits the trustee to litigate § 548 claims and § 727 claims separately.
 

 Another factor important to the Court in
 
 Felsen
 
 and likewise applicable here, was the congressional intent that the “fullest possible inquiry” be made into dischargeability determinations and that only honest debtors be granted a discharge. The Court stated:
 

 Refusing to apply res judicata here would permit the bankruptcy court to make an accurate determination whether respondent in fact committed the deceit, fraud, and malicious conversion which pe
 
 *1379
 
 titioner alleges. These questions are now, for the first time, squarely in issue. They are the type of question Congress intended that the bankruptcy court would resolve. That court can weigh all the evidence, and it can also take into account whether or not petitioner’s failure to press these allegations at an earlier time betrays a weakness in his case on the merits.
 

 442 U.S. at 138, 99 S.Ct. at 2212.
 

 Finally, we note the
 
 Felsen
 
 court’s cautioning instruction that the principle of res judicata should be invoked only after careful inquiry because it blocks “unexplored paths that may lead to truth” and “shields the fraud and the cheat as well as the honest person.” 442 U.S. at 132, 99 S.Ct. at 2210. After that careful inquiry, and in view of the Supreme Court’s opinion in
 
 Felsen,
 
 we decline to impose the principle of res judicata to preclude the Trustee who has utilized proceedings to recover fraudulent transfers under 11 U.S.C. § 548 from later objecting to the Debtor’s discharge based on those same transfers. We recognize the Supreme Court’s holding was limited to the effect of a prior state court judgment on a later dischargeability proceeding, but believe that our extension of this holding to the context of a bankruptcy proceeding to set aside fraudulent transfers is fully compatible with the Supreme Court’s reasoning.
 

 Because we have concluded that res judi-cata and collateral estoppel do not apply in this case, the bankruptcy court was free to consider the nature of the transfers previously involved in the § 548 proceeding as the basis for the denial of the Debtor’s discharge in bankruptcy. Following an evi-dentiary hearing, the bankruptcy court found that the Debtor had transferred property to himself and others with the actual intent to defraud his creditors in violation of § 727(a)(2). This finding is not clearly erroneous and therefore we affirm the judgment of the district court affirming the decision of the bankruptcy judge.
 

 [1]
 

 . The Honorable H. Franklin Waters, United States District Judge for the Western District of Arkansas.
 

 [2]
 

 . The Honorable Charles W. Baker, United States Bankruptcy Judge for the Western District of Arkansas.
 

 [3]
 

 . Title 11, United States Code, § 548(a) states:
 

 (a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor—
 

 (1) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer occurred or such obligation was incurred, indebted; or
 

 (2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
 

 (B)(i) was insolvent on the date that such transfer was made or such obligation was incurred; or became insolvent as a result of such transfer or obligation;
 

 (ii) was engaged in business, or was about to engage in business or a transaction, for which any property remaining with the debt- or was an unreasonably small capital; or
 

 (iii) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor’s ability to pay as such debts matured.
 

 [4]
 

 . Title 11, United States Code, § 727(a)(2) states:
 

 (a) The court shall grant the debtor a discharge, unless—
 

 [[Image here]]
 

 (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—
 

 (A) property of the debtor, within one year before the date of the filing of the petition; or
 

 (B) property of the estate, after the' date of the filing of the petition.