In re Tom L. BARROW, Debtor.

Robert CELL, Plaintiff,

George L. Gullette, Substitute Plaintiff,

v.

Tom L. BARROW, Defendant.

Bankruptcy No. 81–01371–A.
Adv. No. 83–0519–A.

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

June 13, 1988.

Roy B. Zimmerman, Alexandria, Va., for plaintiff Robert Cell.

Robert O. Tyler, Alexandria, Va., for George L. Gullette.

Kermit Rosenberg, McLean, Va., for debtor.

Henry Counts, Jr., Alexandria, Va., Trustee in Bankruptcy.

## MEMORANDUM OPINION

MARTIN V.B. BOSTETTER, Jr., Chief Judge.

This matter comes before the Court upon a motion by Tom L. Barrow ("debtor" or "defendant") to dismiss the complaint prosecuted by George L. Gullette ("plaintiff" or "Gullette") to revoke the debtor's discharge. Gullette was substituted as plain-

tiff in the place of Robert Cell ("Cell"), who had filed the complaint and settled with the debtor during the course of their litigation.

Tom L. and Jean G. Barrow filed a voluntary petition in bankruptcy under chapter 7 on November 31, 1981. Gullette instituted an adversary proceeding objecting to the discharge of the Barrows under § 523 and § 727 of the Bankruptcy Code ("the Code"). 11 U.S.C. §§ 523, 727. Prior to a hearing, Gullette voluntarily withdrew his claim which was based on section 727, and this dismissal was acknowledged in an order entered by this Court on October 15, 1982. In pertinent part, that order provided:

> ORDERED, that the Plaintiff's objections to the Defendant's discharge pursuant to 11 U.S.C. § 727(a)(4) and (c)(2) be, and the same hereby are, dismissed, with prejudice[.]

Gullette's remaining objection based on section 523 was denied, and the Barrows received their discharge on November 16, 1982.

On November 15, 1983, Cell, another creditor of the Barrows and an acquaintance of Gullette, filed a complaint to revoke only Tom L. Barrow's discharge under 11 U.S.C. § 727(d), alleging that Barrow had obtained his discharge through fraud. To obtain assistance in the financing of his case against Barrow, Cell contacted other creditors, including Gullette, in regard to the revocation proceeding. Cell received no response beyond that which he received from Gullette. Gullette assisted Cell in ascertaining the existence and value of the debtor's assets, prepared litigation documents used by Cell, and contributed $2,000.00 towards the payment of an attorney hired to conduct the litigation of Cell's case. Gullette allegedly offered his assistance to ensure that the case would be tried on the merits. The arrangement between the two creditors, however, was never documented and never disclosed to Barrow, the attorneys, the trustee or this Court.

Cell proceeded with his case against Barrow and ultimately obtained a settlement. The settlement agreement between Cell and Barrow was entered by this Court on June 25, 1985 and provided in pertinent part:

7. It is understood that Cell can and will make his entire file available to intervening or substituting party if said party moves to intervene or substitute themselves within sixty (60) days from the date of this agreement.

8. Barrow agrees that he will not oppose any motion or intervention or substitution pursuant to Bankruptcy Rule 7024 and 7025 and agrees to endorse any order for the substitution or intervention of additional parties.

Accordingly, the order which followed the entry of the settlement agreement postponed the final date of entry for sixty (60) days, through August 12, 1985, in order to permit any other party in interest, including the U.S. Trustee, to intervene or substitute itself as party plaintiff and noted that the debtors would not oppose the intervention or substitution.

Upon learning of the settlement between Cell and Barrow, Gullette requested the return of the $2,000.00 that he had forwarded to retain a bankruptcy attorney. Cell's attorney declined to return the money, however, prompting Cell and Barrow to enter into an agreement to provide for repayment (hereinafter "Agreement"). That Agreement in full provided as follows:

### AGREEMENT

WHEREAS, Robert S. Cell and George L. Gullette have each contributed $2,000.00 for a fee of $4,000.00 to attorney, ... as flat compensation to try the case of Robert S. Cell vs. Tom L. Barrow to revoke Tom L. Barrow's discharge in bankruptcy, Adversary Proceeding 84–0519–A; and

WHEREASE (sic), Robert S. Cell desires Court approval of a settlement with Tom L. Barrow for $15,000.00, with leave to any other creditor to proceed as substituted plaintiff, but without ... as attorney (since a conflict of interest could arise);

NOW THEREFORE, it is agreed that Robert S. Cell will reimburse George L. Gullette $2,000.00 within fifteen (15) days, or sooner, if paid any amount by Tom L. Barrow, and the said George L. Gullette agrees that if he succeeds in taking the case against Tom L. Barrow, he will [give] any reimbursement of fees received through the Court [to] Robert S. Cell, up to $[2],000.00, and if George L. Gullette obtains a settlement from Tom L. Barrow without trying the case he will pay Robert Cell $2,000.00.

June 11, 1985

s/ George L. Gullette

s/ Robert S. Cell

Note: The information shown in brackets reflects the handwritten changes made in the original agreement.

On August 9, 1985, Gullette filed an application to intervene and requested this Court to substitute him as plaintiff in the adversary proceding against Barrow consistent with this Court's order. As grounds for his application to intervene, Gullette stated that he was a "creditor of the debtor and in all other respects ... qualified to prosecute this action."

The defendant now seeks to dismiss the proceeding to revoke his discharge on various grounds, alleging that:

1. Gullette as the real party in interest in the adversary proceeding, *Cell v. Barrow,* and as a recipient of funds disbursed in the compromise of that adversary is barred from intervening in the instant litigation by the settlement agreement entered by this Court;

2. Gullette and Cell were in a principal/agent relationship, therefore Cell's agreement to settle with Barrow was binding on Gullette;

3. Gullette was in privity with Cell, therefore the settlement agreement between Cell and Barrow also was binding on Gullette, and

4. The intervention and substitution of Gullette as party plaintiff is barred by res judicata and estoppel in view of Gullette's status as plaintiff in the prior adversary proceeding objecting to the Barrows' discharge and the dismissal rendered therein.

The debtor's allegations actually span two separate litigations. The first three allegations pertain to the revocation proceeding filed by Cell against Barrow, which ultimately ended in settlement. The last allegation pertains to the initial adversary proceeding objecting to the Barrows' discharge filed by Gullette, alone.

We entertain first the allegation that Gullette is barred from intervening in the instant case in view of his former adversary proceeding and the principles of res judicata and collateral estoppel, in that a resolution of these threshold issues would have been a resolution of the entire matter. As indicated, Gullette in his own adversary proceeding objecting to the Barrows' discharge, voluntarily dismissed his claim based on § 727(a)(4) and (c)(2) of the Code with prejudice.[1] Although the reasons for Gullette's actions are not entirely clear, it is certain that no evidence was put before this Court, and that no explanatory settlement agreement ensued.

Although the debtor makes no distinction between the doctrines of res judicata and collateral estoppel, we consider them separately in our discussion below.[2] The

---

1. [§ 727(a) ](4) the debtor knowingly and fraudulently, in or in connection with the case—

    (A) made a false oath or account;

    (B) presented or used a false claim;

    (C) gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or

    (D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs;

    [c](2) On request of a party in interest, the court may order the trustee to examine the acts and conduct of the debtor to determine whether a ground exists for denial of discharge.

2. The Fourth Circuit in *Harnett v. Billman,* noted that where the application of res judicata does not touch upon an important question of state law such as privity, federal rules of decision are applicable to measure the preclusive

Fourth Circuit has observed that the doctrine of res judicata represents society's interest in the finality of judgments, *Itco Corp. v. Michelin Tire Corp., Commercial Div.,* 722 F.2d 42, 50 (4th Cir.1983), *cert. denied,* 469 U.S. 1215, 105 S.Ct. 1191, 84 L.Ed.2d 337 (1985) and will bar a subsequent suit if three requirements are met:

1. The first suit must have concluded in a final judgment on the merits;

2. The second suit must involve the assertion of claims by persons who were parties or in privity with parties in the first suit; and

3. The claims asserted in a second suit must be based on the same cause of action as the first suit.

*Kenny v. Quigg,* 820 F.2d 665, 669 (4th Cir.1987), *citing Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979); *Harnett v. Billman,* 800 F.2d 1308, 1312 (4th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1571, 94 L.Ed.2d 763 (1987). The doctrine of res judicata applies not only to the claims that were actually determined but also to matters which could have been resolved in the first litigation. *See Harnett v. Billman,* 800 F.2d 1308, 1314 (4th Cir.1986) (citing general principle that judgment in a first suit extinguishes any claims that might have been raised in that litigation).

Applying the facts of the instant case to the requirements above, the first two criteria are easily met. Gullette's voluntary dismissal of his claim with prejudice constituted a valid, final judgment on the merits, *see Kenny v. Quigg,* 820 F.2d at 669, and the parties involved in the instant litigation are the same as were involved in the prior suit. The questions remaining as to whether Gullette's intervention to revoke Barrow's discharge is based on the same cause of action as Gullette's objection to Barrow's discharge, and whether Gullette

could have litigated the issues asserted now at that time are indeed more troublesome.

To determine whether Gullette's revocation of discharge proceeding is based on the same cause of action as his objection to the debtor's discharge, we must first proceed by comparing Gullette's original complaint with the complaint filed by Cell. In the first complaint, Gullette accused the Barrows of omitting or misstating financial information when filing their petition.[3] Such misrepresentations, Gullette alleged, were "false statements," and warranted the denial of the Barrows' discharge on the basis of § 727(a)(4) and (c)(2). Cell's complaint to revoke Tom L. Barrow's discharge, upon which Gullette must rely, alleges that Barrow obtained his "discharge through fraud." Specifically, Cell alleged that the debtor omitted information in his schedules and petitions pertaining to assets of the debtor's estate, testified falsely at the Section 341 hearing, induced a family member to file a false affidavit pertaining to the status of a corporation in which the debtors had stock, and testified falsely at a Rule 2004 examination when asked questions regarding the status of that stock. Upon review, it is evident that the basis for the two complaints is virtually the same: Barrow's allegedly fraudulent documentation and disposition of assets with respect to his petition in bankruptcy. Gullette merely comes before this Court with different facts, allegedly unknown prior to the debtor's discharge.

Under a traditional res judicata analysis Gullette's intervention certainly would be barred. The Fourth Circuit in *Harnett v. Billman* held that res judicata precludes the subsequent litigation of "all or any part of the transaction, or series of connected transactions, out of which the [first] action

---

effect of a prior judgment. *See* 800 F.2d 1308, 1313 (4th Cir.1986). Accordingly, we apply federal law in our general discussions of res judicata principles, and apply state law in our discussion of the debtor's allegations involving the concept of privity *infra.*

**3.** Specifically, Gullette alleged that the Barrows failed to state that the debtor was a trustee of a

trust fund, transferred silverware to children in anticipation of filing, overstated the amount of an oustanding loan (listed as $104,000.00 but allegedly reduced to $12,000.00), misrepresented the occurrence of a foreclosure, listed the value of his interest in B & G Investors as "zero", and failed to list mobile homes of the debtors.

arose." *Harnett,* 800 F.2d at 1314. The *Harnett* court added that "[f]or the purposes of res judicata, it is not necessary to ask if the plaintiff knew of his present claim at the time of the former judgment, for it is the existence of the present claim, not party awareness that controls." *Id.* at 1313; *see also Lester v. National Broadcasting Co. Inc.,* 217 F.2d 399, 400 (9th Cir.1954) *cert. denied,* 348 U.S. 954, 75 S.Ct. 444, 99 L.Ed. 746 (1955) (to permit repeated attacks on a judgment and to open up judgments years later for a new reason, or an expansion of facts concerning the same reason would soon lead to chaos); *In re Wilson,* 72 B.R. 956, 959 (Bankr.M.D. Fla.1987) ("It would be undeserved to give debtor/defendant a second bite at the apple when he knowingly chose not to defend himself in the first instance."); *accord* 1B J. Moore, J. Lucas, T. Currier, Moore's Federal Practice ¶ 0.410[1] at 354 (2d ed. 1984) ("Nor will the addition of new factual allegations create a new cause of action for the same jury.") [hereinafter cited as *Moore's Federal Practice*].

A traditional res judicata analysis, and the Fourth Circuit's observations in *Harnett,* however, conflict directly with the Bankruptcy Code itself, which affords creditors with two opportunities to challenge a debtor's discharge. Under § 727(a), creditors have the right to object to a debtor's discharge. Under § 727(d) a creditor may request the revocation of a debtor's discharge for just cause. *See* 11 U.S.C. § 727(d). With respect to a revocation requested on the basis of fraud, a petition is timely filed if done so within one year of the debtor's discharge and the *only* requirement of the creditor is that he must not have known of such fraud until after the granting of the discharge. *See* § 727(d), (e). Section 727(d) acting almost as a statutorily created exception to the res judicata doctrine, tracks the general principle that res judicata is inapplicable to "cases where fraud, concealment, or misrepresentation have caused the plaintiff to fail to include a claim in a former action." *See Harnett,* 800 F.2d at 1313 (citing Restatement (Second) of Judgments § 26, comment j (1982)).[4]

Consequently, while the issue of whether Gullette should have at the time of his first suit been alerted to all questions regarding the debtor's disposition of his assets may be relevant to an examination of the equitable defense of laches, a strict application of res judicata principles to bar the instant suit is inappropriate. The debtor, however, did not raise the issue of laches and, in view of the limited information before the Court regarding this defense, we are unable to make a determination of whether the plaintiff's complaint is barred on that ground at this time.[5]

Faced with a fact situation similar to the case at bar, the Eighth Circuit in *Lovell v. Mixon* also determined that the principles of res judicata and collateral estoppel did not operate as a bar to certain bankruptcy litigation in which Congress intended parties to litigate certain claims separately. *See* 719 F.2d 1373, 1378 (8th Cir.1983). In *Lovell,* the debtor had filed a voluntary petition in bankruptcy. 719 F.2d at 1374. Shortly thereafter, a trustee filed two complaints under § 548 of the Code seeking to

---

**4.** In the instant case, it is Cell's complaint upon which Gullette must rely to intervene. Cell has specifically alleged therein and testified that although he had suspicions of the debtor's allegedly fraudulently conduct in 1982, he did not have proof to verify his suspicions until after the debtor's dicharge. *See* Transcript of Hearing on Motion of Debtor/Defendant to Dismiss, May 14, 1986, at pp. 39–42 [hereinafter "Transcript"]. With respect to Gullette's actual knowledge, the debtor alleges only that the primary grounds for the revocation proceeding were "discoverable" by Gullette prior to the debtor's discharge. Such an allegation, however, does not contravene § 727(d), which requires the absence of knowledge, not opportunity. A creditor's lack of due diligence is, however, relevant to the issue of laches. *See* note 5 *infra.*

**5.** Section 727(e) of the Code requires only that the petitioner file a complaint for revocation based on fraud within one year of the debtor's discharge. *See* 11 U.S.C. § 727(e)(1). Although no reference to laches is made, bankruptcy courts have held that "the equitable defense of laches is available under § 727 to prevent revocation under the proper circumstances." *Matter of McElmurry,* 23 B.R. 533, 535 n. 1 (W.D.Mo.1982); *see also In re Herron,* 49 B.R. 32, 33 (Bankr.W.D.Ky.1985).

set aside various transfers of assets allegedly made by the debtor. *Id.* at 1374–75. The first complaint contained one count which was decided in favor of the trustee after a hearing. *Id.* The second complaint contained six counts and, in court orders approving settlements, counts I, II, and IV were dismissed without prejudice, counts III, V, and VI were dismissed with prejudice, and the debtor was discharged. *Id.*

Approximately seven weeks later the trustee initiated a proceeding under § 727 to revoke the debtor's discharge on the basis of the debtor's intent to defraud his creditors. *Id.* The trustee's petition referred to the same transactions involved in the trustee's first complaint, and counts II, IV, and VI of the second complaint. *Id.* The bankruptcy court held that neither the doctrine of res judicata nor collateral estoppel operated as a bar to the trustee's litigation, decided in favor of the trustee on the merits and revoked the debtor's discharge. *Id.* The district court affirmed the bankruptcy court's decision to revoke the debtor's discharge but rejected the determination that the doctrines of res judicata and collateral estoppel were inapplicable. *Id.* at 1375–76.

In considering whether the principles of res judicata were applicable, the Eighth Circuit relied heavily on the United States Supreme Court's decision in *Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979). In *Brown,* a creditor sought to establish that a debt, which had previously been reduced to a judgment in state court, was not dischargeable. 442 U.S. at 129, 99 S.Ct. at 2208. The debtor in *Brown* claimed that the doctrine of res judicata barred the relitigation of whether the he had committed fraud because it was a matter that could have been determined in the state court proceeding. *Id.*

Upon reviewing the principles applicable to the doctrine of res judicata, the Supreme Court noted that neither party had the full incentive to litigate bankruptcy issues in the state court collection proceeding and the applicability of res judicata would force the litigation of dischargeability issues prematurely. *Id.* at 134–35, 99 S.Ct. at 2211.

The Supreme Court also reasoned that Congress intended all dischargeability questions to be resolved in bankruptcy court and this intent would be thwarted if the Supreme Court allowed the doctrine of res judicata to bar the creditor's petition. *Id.*

Applying the reasoning in *Brown* to the facts in *Lovell,* the Eighth Circuit noted that neither the trustee nor the debtor had the incentive to make or defend allegations on the basis of fraud at the time the trustee sought to set aside the fraudulent transfers. 719 F.2d at 1377–78. Moreover, forcing the issue of fraud to be determined at the initial adversary proceeding on the objection to the debtor's discharge would thwart Congress' intent to litigate the claims separately. *Id.* at 1378.

The *Lovell* court also relied upon the Supreme Court's observations that declining to apply res judicata would permit the bankruptcy court to make the necessary determination of whether the debtor had in fact committed the fraud that the creditor alleged, and that the doctrine of res judicata should be applied only after careful inquiry as the bar can operate to protect the dishonest as well as the honest person. 719 F.2d at 1379; *see Brown,* 442 U.S. at 132, 135, 99 S.Ct. at 2209, 2211. The *Lovell* court recognized that the Supreme Court's holding was limited to the effect of a prior state court judgment on a subsequent dischargeability proceeding, but believed that the extension of the holding in *Brown* to the context of a bankruptcy proceeding to set aside fraudulent transfers was fully compatible with the Supreme Court's reasoning. 719 F.2d at 1379.

Several observations of the *Lovell* court, such as Congress' intent to litigate certain bankruptcy claims separately, and the need for bankruptcy courts to determine whether a creditor has in fact committed the fraud alleged, are applicable to the case at bar and support this Court's determination that the doctrine of res judicata does not preclude the consideration of Gullette's claims. While Gullette may have had the "incentive" to litigate all claims in the first litigation, the information contained in the revocation complaint was alleged to be un-

known until after the debtor's discharge, in compliance with the Code.

■ We must now address whether Gullette's intervention is barred by collateral estoppel. The Fourth Circuit has held that "[c]ollateral estoppel bars relitigation of an issue previously decided if the party against whom the prior decision is asserted had a 'full and fair opportunity' to litigate that issue in the earlier case." *Combs v. Richardson,* 838 F.2d 112, 114 (4th Cir. 1988) (quoting *Allen v. McCurry,* 449 U.S. 90, 94–95, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980)). Collateral estoppel differs from res judicata in that it "treats as final only those issues actually and necessarily determined in the prior suit." *Id.* (quoting *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979)).

In analyzing whether a dismissal of a cause of action could bar further proceedings of the same issues, the Third Circuit held in *Lawlor v. National Screen Service Corp.* that in such situations "[n]o question of collateral estoppel by the former judgment is involved because the case was never tried and there was not, therefore, such finding of fact which [would] preclude the parties to that litigation from questioning the finding thereafter." 211 F.2d 934, 935 (3rd Cir.1954). The United States Supreme Court affirmed the Third Circuit's conclusion and noted that a judgment unaccompanied by findings did not bind the parties on any issue.[6] *Lawlor v. National Screen Service Corp.,* 349 U.S. 322, 327, 75 S.Ct. 865, 868, 99 L.Ed. 1122 (1955) (reversing Third Circuit's decision on other grounds). In the case at bar, Gullette's voluntary dismissal was not accompanied by an explanatory settlement agreement, or any other findings of fact, and thus would not operate as a bar to the instant action on the basis of collateral estoppel.[7]

■ Given that an examination of the threshold issues did not reveal that Gullette's intervention is barred at this time, we must continue to examine the debtor's remaining allegations. The defendant alleges next that Gullette was the "real party in interest" in the suit between Cell and Barrow and having benefitted from the settlement is prohibited from intervening as a creditor at this time. *See* Fed.R.Civ.P. 17(a) ("Rule 17(a)") ("Every action shall be prosecuted in the name of the real party in interest.")

The Fourth Circuit has defined a "real party in interest" as a "person who possesses the right to enforce the claim and who has significant interest in the litigation." *Virginia Electric & Power Co. v. Westinghouse Elec. Corp.,* 485 F.2d 78, 83 (4th Cir.1973), *cert. denied,* 415 U.S. 935, 94 S.Ct. 1450, 39 L.Ed.2d 493 (1974). The purpose of Rule 17(a) is to protect the defendant against a subsequent action by the party actually entitled to relief and to ensure that the judgment will have proper res judicata effect. *Id.* at 84. If a court determines that the "real party in interest" is not named, prior to dismissal it must allow a reasonable time for the ratification, joinder, or substitution of the real party to prevent further unnecessary litigation. *See* Fed.R.Civ.P. 17(a) (providing for joinder or substitution of real party in interest); *see also Dubuque Stone Products Co. v. Fred L. Gray Co.,* 356 F.2d 718, 723 (8th Cir.1966) (one of the basic purposes of Rule 17(a) is to protect the defendant from unnecessary litigation).

■ In a revocation of discharge proceeding, § 727 of the Bankruptcy Code enables a trustee, creditor, or the United States Trustee to request a hearing to review a debtor's discharge. *See* 11 U.S.C. § 727(d). In such proceedings, therefore, there is no single plaintiff with "real party" status that may bar further litigation

---

6. The action reviewed by the *Lawlor* courts had been dismissed with prejudice as in the instant case.

7. With respect to whether the Trustee's action was barred on the principles of collateral estoppel in *Lovell,* the Eighth Circuit concluded that the issue of intentional fraud was never decided

by the bankruptcy court, noting that most of the trustee's claims had been settled and dismissed. *Id.* at 1377. The *Lovell* court concluded, therefore, that it was not precluded from considering and deciding an issue never before resolved. *Id.*

or loss. If Barrow was successful in preserving his discharge upon a challenge by Gullette and Cell, a trustee or another creditor could still request a hearing on revocation on other grounds. If Barrow failed in thwarting revocation, he then would be subject to the litigation of all claims filed against him. Moreover, with respect to the allegation that Gullette may have shared in the settlement proceeds, thereby making him the "real party in interest", the mere fact that a party may benefit from the litigation in question does not raise that party alone to such a status. *See Armour Pharmaceutical Co. v. Home Ins. Co.*, 60 F.R.D. 592, 594 (N.D.Ill.1973). The allegation that Gullette was the "real party in interest" having no merit or relevance, the debtor's attempt to dismiss the instant proceeding on that basis must be denied.

■ The debtor next alleges that the relationship between Gullette and Cell was that of principal and agent and that the settlement agreement between Cell and Barrow is binding on Gullette. The presumption underlying the rule that a principal is bound by a judgment entered in a suit that his agent has prosecuted is that the issue resolved would have been the same for both. *Cf. City of Richmond v. Davis*, 135 Va. 319, 327–28, 116 S.E. 492 (1923) (if a plaintiff sues an agent and loses, the plaintiff is estopped from suing the principal, provided the issue to be tried is identical against both).

The Court notes at the outset that while both Cell and Gullette were well aware that Cell's success would greatly benefit Gullette's cause, their claims are not based on similar causes of action. Gullette seeks to revoke Barrow's discharge to attempt to reclaim damages on a fraud and breach of

contract action involving the sale of a one-half interest in a corporation, B & G Investors.[8] Cell sought to reclaim damages upon the breach of an employment contract action, which had been determined in a judgment by the United States District Court for the District of Maryland against Mortgage Investment Co., Prestige Management Corporation, and the Barrows.[9] Moreover, the individual or individuals who institute a revocation proceeding do so to compel the judicial review of the basis upon which the debtor obtained his discharge. Beyond that review, no further rights are determined. Absent an identity of claims, and in view of the nature of a revocation proceeding itself, the principles of agency are generally inapplicable to the matter at hand.

■ Even assuming their relevance to the instant case, Gullette would still not be bound under a traditional analysis of a principal-agent relationship because neither the acts of Gullette and Cell, nor the conduct of Barrow support the conclusion that Cell acted as Gullette's agent in the litigation against Barrow. Under Virginia law, an agent or servant acting for his principal, within the scope of authority conferred upon him, binds the principal or master in a judgment rendered in a suit that the agent has prosecuted or defended. *City of Richmond v. Davis*, 135 Va. 319, 323, 116 S.E. 492 (1923). The principal also may be bound if the action although not authorized was later ratified by the principal or master. *Id.*[10]

Agents may be deemed to have the requisite authority to bind a principal if the record reflects evidence of "actual" or "apparent" authority. *See Neff Trailer Sales*

---

**8.** Gullette was awarded a judgment in the amount of $99,261.31 in the Circuit Court for Prince William County against Barrow's co-defendant. The order awarding judgment merely noted Barrow's discharge in bankruptcy. *See* Order of Judgment (August 19, 1983), Chancery No. 15021.

**9.** The District Court for Maryland entered a judgment order in favor of Cell for $37,500.00, with arbitration costs of $10,051.37 and interest from August 23, 1978, on April 6, 1981, Civil Action No. JH–78–1467.

**10.** In evaluating which individuals are bound by a settlement agreement, a federal court must look to the substantive law of the state in which the agreement was made. *See Reichelt v. Urban Inv. and Dev. Co.*, 611 F.Supp. 952, 954 (N.D. Ill.1985) (settlement agreement is a contract and as such construction and enforcement of settlement agreements are governed by principles of local law applicable to contracts generally).

*v. Dellinger*, 221 Va. 367, 370, 269 S.E.2d 386 (1980). In the instant case, both Cell and Gullette deny the existence of an agency relationship and there is no independent evidence that Gullette expressly authorized Cell to act for him as an agent in the adversary proceeding to review Barrow's discharge. There is, therefore, no evidence before the Court indicating that Cell was expressly authorized to conduct the litigation against Barrow on behalf of Gullette.

A court may construe the existence of "apparent" authority, if the conduct of the principal reasonably caused a third person to believe that the principal consented to have the act done on his behalf by the alleged agent. *See MBA, Inc. v. VNU Amvest, Inc.*, 51 B.R. 966, 973, n. 1 (Bankr. E.D.Va.1985) (citing Restatement of Agency (Second) § 27 (1958)). Thus, the principal must either "intend the resulting belief in the agent's authority or at least realize 'that his conduct is likely to create such a belief'." *Id.* at 973.

In the case at bar, Gullette executed litigation documents, travelled with Cell to Florida to uncover assets, and provided money for an attorney. At first glance, it might appear that Gullette was a prominent factor in the litigation decision making, however, the documents drafted were inconsequential,[11] Gullette's assistance was always at Cell's request,[12] and Cell has testified that he would have proceeded with his adversary suit without the benefit of an attorney.[13] Moreover, the attorney for the debtor stated at the hearing on the debtor's motion to dismiss that "had Barrow known of this relationship, he would not have set-

tled." Consequently, in addition to there being no acts by Gullette which could have been perceived as being the acts of a principal, Barrow has admitted that he did not rely on Cell's status as Gullette's agent.[14]

The Virginia Supreme Court also has examined principal-agent relationships in terms of "control". In *Whitfield v. Whittaker Memorial Hospital*, the court noted that:

[i]n determining whether a person is the agent of another, it is necessary that he not only be subject to the latter's control, or right of control, with regard to the work to be done and the manner of performing it, but the work has to be done on the business of the principal or for his benefit. Actual control, however, is not the test; it is the right to control which is determinative.

210 Va. 176, 181, 169 S.E.2d 563 (1969). In the instant case, Cell and Gullette have both denied that Gullette controlled, or had any right to control Cell's litigation, and the evidence adduced by the debtor has failed to prove otherwise. In settling the suit against Barrow, Cell received $15,000.00 to which only he was entitled. The settlement of a case which omits the principal entirely cannot be perceived as evidence of the principal's control or being within the scope of the agent's authority. *See City of Richmond v. Davis*, 135 Va. 319, 323, 116 S.E. 492 (1923) (principal not bound by any act of his agent which is not within the scope of his authority).

Finally, the debtor points to the Agreement between Cell and Gullette providing for the return of Gullette's $2,000.00 out of

---

11. The debtor introduced four exhibits at the hearing on the debtor's Motion to Dismiss that allegedly were prepared by Gullette. *See* Transcript at pp. 24–25. Exhibits A, C, and D were orders requiring the appearance of witnesses at Rule 2004 examinations and Exhibit B was a Motion for the Surrender of Property. *Id.* When asked whether the documents had been drafted by him, Gullette testified that he "probably did" but did not explicitly remember. *Id.* at 25.

12. *See Transcript* at pp. 23, 43, and 45.

13. *See Transcript* at p. 44.

14. It is possible that the debtor has not asserted that Cell acted as an agent for an undisclosed principal, because even this theory cannot withstand scrutiny. When an agent contracts on behalf of an undisclosed principal, the third party may as a general rule hold either the agent or his principal liable. *Harriss, Magill & Co., Inc. v. Rodgers & Co.*, 143 Va. 815, 828–29, 129 S.E. 513 (1925). The third party may not hold both the agent and the principal liable. *Leterman v. Charlottesville Lumber Co.*, 110 Va. 769, 772, 67 S.E. 281 (1910). To hold an undisclosed principal, there must be an election by all persons to discharge the agent. *Harris v. McKay*, 138 Va. 448, 458–59, 122 S.E. 137 (1924).

the settlement proceeds as a ratification of Cell's acts as an agent. The Court notes that that provision must be considered in conjunction with the provision providing for the return of that money to Cell, if Gullette was later successful in revoking Barrow's discharge. It appears that the forthcoming settlement merely represented a ready source of cash funds rather than an award to be shared by the two creditors.

Perhaps a different case would be before the Court if the debtor had established that Gullette controlled or had the right to control the entire litigation from the outset, determined the amount to settle for and then shared the amount received with Cell in a proportion similar to that of their individual claims. The instant facts, however, do not establish the existence of a principal-agent relationship that would bar Gullette's claim at this time.

■ Barrow finally alleges that Gullette's claim is barred on the basis of privity. The debtor asserts that the settlement order entered by this Court prevented Cell from continuing with the revocation proceeding under any circumstances. The debtor then maintains that Gullette was in privity with Cell by virtue of their relationship and therefore was bound by the settlement agreement dated June 11, 1985. Again the debtor relies heavily on the proposition that "Gullette and Cell had the same material interest in the subject matter of this proceeding since its inception: the revocation of Barrow's discharge" to support his contention that Gullette's claim is now barred.[15]

A basic principle of res judicata and collateral estoppel is that parties to a prior action may be bound but nonparties are not bound. *Spiker v. Capitol Milk Producers Co-op, Inc.*, 577 F.Supp. 416, 418 (W.D. Va.1983). This fundamental principle is based on the due process guaranty of a full and fair opportunity to litigate. *Hardy v. Johns–Manville Sales Corp.*, 681 F.2d 334, 338 (5th Cir.1982). An exception to this basic rule of binding only formal parties to

a litigation is in the situation where the "nonparty to the first suit was in 'privity' with a party to the first suit." *Spiker*, 557 F.Supp. at 418.

At the outset, the Court notes that if we adopted the debtor's basis for identifying parties in privity, that is, having the same material interest in the revocation, then all the other creditors who filed proofs of claim in the Barrows' bankruptcy case also would be bound. And yet, recognizing the inaccuracy of such a position, the debtor expressly declined to object to any creditor wishing to intervene or substitute as plaintiff in the revocation proceeding against the Barrows in the settlement agreement itself.

Assuming, however, that the concept of privity is applicable, we must look to the law of the State of Virginia in the instant case.[16] The Virginia Supreme Court has noted that there is no fixed definition of privity that may automatically be applied to cases involving res judicata issues. *Nero v. Ferris*, 222 Va. 807, 813, 284 S.E.2d 828 (1981). Virginia courts generally have held that:

'privity' means a mutual or successive relationship to the same rights of property, or such an identification in interest of one person with another as to represent the same legal rights, and the term 'privy,' when applied to a judgment or decree refers to one whose interest has been legally represented at the trial.

*Patterson v. Saunders*, 194 Va. 607, 613, 74 S.E.2d 204 (1953); *Kesler v. Fentress*, 223 Va. 14, 17, 286 S.E.2d 156 (1982); *see also, Spiker v. Capitol Milk Producers Co-op, Inc.*, 577 F.Supp. 416, 418 (W.D. Va.1983) (interpreting Virginia case law). In *Nero v. Ferris*, the court found a principal and agent to be in privity when the liability of the principal would have been derivative of the tort liability of his agent, and jurisdiction of a California court over the principal would have been derivative from the assertion of the jurisdiction over the agent driving the principal's car in California. 222 Va. at 813, 284 S.E.2d 828. In

*Kesler v. Fentress*, the court found that the defendants because of their joint-ownership of land as husband and wife, stood in privity with one another in a previous trespass action. 223 Va. 14, 17, 286 S.E.2d 156 (1982). In *Spiker v. Capitol Milk Producers Co-op, Inc.*, the District Court for the Western District of Virginia observed that even if individuals injured in an automobile accident are members of the same family:

> [e]ach has an independent cause of action for personal injuries, free from [claim or issue] preclusion ... for the same reasons as apply to nonpreclusion among unrelated nonparties. There may be direct and obvious conflicts of interest, ... [or] any one family member might often provide inadequate or even hostile representation of another.

577 F.Supp. 416, 419 (W.D.Va.1983), (quoting 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4459 (1981)).

In the instant case, Gullette and Cell could not be determined to be in privity in accordance with Virginia's general rule. A mutual or successive relationship to the same rights of property is not at issue, nor is there an identification of interests to the extent that the same legal rights are at stake. If Cell had proceeded to trial and lost, Gullette would not have been barred from attempting to revoke the Barrow's discharge on that basis. Gullette's right to sue Barrow on the merits of his breach of contract claim would have been derivative of the revocation of Barrow's discharge, but that opportunity to sue would have been derivative of any creditor or trustee who filed the petition for revocation.

With respect to the case law interpreting Virginia's general rule, the legal relationship between Gullette and Cell does not fit into the narrow concept of privity recognized by the Virginia courts. We have not found evidence of a principal-agent relationship, as in *Nero*, and it is clear from the

resulting settlement between Cell and Barrow that there was a conflict of interest as alluded to by the Virginia Supreme Court in *Spiker*.

While the Virginia courts have not extended the application of estoppel principles to nonparties who take control of a party's litigation, the United States Supreme Court has noted that precluding parties from contesting matters that they have had a full and fair opportunity to litigate protects adversaries from multiple lawsuits and conserves judicial resources and that "[t]hese interests are similarly implicated when nonparties assume control over litigation in which they have a direct financial or proprietary interest and seek to redetermine issues previously resolved." *Montana v. United States*, 440 U.S. 147, 153–54, 99 S.Ct. 970, 974, 59 L.Ed.2d 210 (1979); *accord* 1B Moore's Federal Practice, ¶ 0.411[6] at 456 (the general rule as to participating nonparties requires that the nonparty have control or at least joint control of the prosecution or defense of the suit).[17]

In *Montana v. United States*, the Supreme Court observed that the government although not a party had participated in litigation involving a government contractor to such an extent as to "actuate principles of estoppel." 440 U.S. at 155, 99 S.Ct. at 974. In *Montana v. United States*, the government:

1. Required the lawsuit to be filed;
2. Reviewed and approved the complaint;
3. Paid attorney's fees and costs;
4. Directed the appeal from State District Court to the Montana Supreme Court;
5. Appeared and submitted a brief as amicus in the Montana Supreme Court;
6. Directed the filing of a notice of appeal to the Supreme Court; and

17. The *Montana* court observed that although the term "privies" is used occasionally to denominate nonparties who control litigation, such usage has been criticized as conclusory and analytically unsound. 440 U.S. at 154, n. 5, 99 S.Ct. 974 n. 5.

7. Effectuated the contractor's abandonment of an appeal on the advice of the Solicitor General.

*See* 440 U.S. at 155, 99 S.Ct. at 974. Upon making the threshold determination that the government as a nonparty had exerted sufficient control over a party's litigation, the court made further inquiries to determine whether the applicability of collateral estoppel was appropriate. *Id.*

In the instant case, Gullette's involvement in Cell's litigation does not even approach that of the government's in *Montana v. United States*, thus eliminating the need to inquire further into this basis for barring Gullette's claim. While it is clear from the facts that Gullette had a definite interest in the revocation proceeding, an identity of interest without more will not suffice to bar a suit by a nonparty. *See American Postal Workers Union Columbus Area Local v. U.S. Postal Serv.*, 736 F.2d 317, 319 (6th Cir.1984). Consequently, Gullette's nonparty participation not having risen to a level justifying preclusion, Gullette's revocation complaint is not barred on that basis at this time.

This matter comes before the Court upon a motion to dismiss and although such motions have the valid purpose of testing the legal sufficiency of a plaintiff's complaint, a party's right to his day in court must be protected zealously. *Lester v. National Broadcasting Co., Inc.*, 217 F.2d 399, 400 (9th Cir.1954); *see D.P. Apparel Corp. v. Roadway Express Inc.*, 736 F.2d 1, 3 (1st Cir.1984) (involuntary dismissals under Fed.R.Civ.P. 41(b) should be granted sparingly); *Joe Powell & Assoc., Inc. v. International Tel. and Tel. Corp.*, 22 B.R. 588, 592 (Bankr.E.D.Tenn.1982) (ordinarily motions to dismiss are disfavored, rarely granted, and any doubt is resolved in favor of nondismissal). In the case at bar, the debtor propounded several theories upon which to base his motion but the evidence did not support any one definitively. The Court concludes that although Cell requested and appreciated Gullette's assistance, the conduct of Cell's adversary proceeding was entirely up to Cell who had the right of control. Perhaps Gullette had hoped Cell would act on behalf of the two, however, it is evident that Cell felt no obligation to do so since he resolved his complaint in a settlement agreement which satisfied his claim alone.[18]

The statement made by the debtor's counsel that Barrow would not have settled had he known of the relationship between Gullette and Cell and, if Gullette was allowed to intervene requested that the settlement be revoked or rescinded, is not relevant. We note, without passing on the merits of such a claim, that Barrow could have attempted to set aside the settlement agreement, if he had so deemed proper, at the time he became aware of the relationship between Gullette and Cell. We have no basis for disturbing that agreement at this time. Accordingly, the defendant's motion to dismiss the instant adversary proceeding is denied on all grounds.

An appropriate order will enter.

**18.** The Fourth Circuit also recognizes that nonparties may be bound by a judgment under the doctrine of virtual representation. *Klugh v. U.S.*, 818 F.2d 294 (4th Cir.1987). Under the doctrine of virtual representation, "a nonparty to an action may be bound by a judgment under res judicata if one of the parties to the action is so closely aligned to the interests of the nonparty as to be his virtual representative." *Id.* at 300. A court may not apply this doctrine if the interests of the two parties are separate or where parties to the first suit were not accountable to the nonparty who filed subsequently. *Id.* In addition, the party who acted as virtual representative for the nonparty must have done so with at least the tacit approval of the court. *Id.* Since the alleged representation of Gullette by Cell was undisclosed, the doctrine is inapplicable in the instant case.