SAUL ROSENBLOOM ET AL. *v.* THE ELECTRIC MOTOR REPAIR CO.

[No. 1027, September Term, 1975.]

*Decided June 9, 1976.*

The cause was argued before MOORE, LOWE and MASON, JJ.

*Jonathan A. Azrael* for appellants.

No brief or appearance for appellee.

LOWE, J., delivered the opinion of the Court.

Louis J. Sagner, Esq., representing The Electric Motor Repair Co., a creditor of Knight Press of Maryland, Inc., filed a Bill of Complaint in the Circuit Court for Baltimore County, for the involuntary dissolution of Knight Press due to its insolvency, and the appointment of a receiver,

pursuant to Md. Code, Art. 23, § 80. On March 19, 1975, the court, by Order of the chancellor pursuant to § 80, declared the corporation insolvent and appointed Mr. Sagner Receiver,[1] expressly authorizing him to take possession of all property, books, records, papers, and effects of Knight Press. Knight Press was "required to yield up and deliver the same to the Receiver. . . ."

On June 20, 1975 the Receiver, alleging that he had not received any of the items specified in the order (nor had Knight Press prepared a schedule of its properties, encumbrances, creditors, exemptions or transfers) filed an application to compel compliance with Md. Rule BP2. That rule requires that a schedule of property and debts be filed by the debtor within fifteen days after the assumption of jurisdiction by a court. The rule provides an alternative in the event the debtor fails to comply.

> "If the debtor fails to file the schedule within the time provided . . . the assignee or receiver shall, . . . cause such schedule to be made and filed. . . ." Md. Rule BP2.b.1.

The Receiver here did not comply with the rule's alternate provision but chose instead to invoke its penalty clause. He filed an "Application to Compel Compliance with Rule BP2" and prayed simply that the "Court . . . pass an Order requiring the defendant to file schedules within a certain time or otherwise to be held in contempt . . .", presumably because Md. Rule BP2.b.3. states that

> "[a] debtor who wrongfully fails to file a schedule . . . may be punished for contempt."

Thereafter, Saul Rosenbloom moved to strike the order and prayed a hearing on the Receiver's application.

In his answer to that motion, the Receiver asserted:

> " . . . that there is not one penny in this estate and that the books and records of the Defendant are

---

1. Mr. Sagner was later also appointed attorney for the Receiver.

voluminous and are still in the possession of and under the control of Saul Rosenbloom and his accountant and that, therefore, it would be impossible for the Respondent to file schedules, as provided by the rules of court."

The chancellor's "Memorandum Opinion," shows that the reasoning behind his order rested upon the respondent's assertion that the corporate defendant was impecunious. The essence of the opinion is contained in its last three paragraphs which state:

"It is agreed that at the present time the corporation has no assets of any kind out of which the Receiver could pay for the preparation of schedules, nor has it had any such assets since March 19, 1975.

It is my judgment that Maryland Rule BP2 directs the filing of schedules by the debtor, and by necessary implication the debtor in this case being a corporation, contemplates that the preparation of schedules is to be effected by the officers and stockholders of the corporation. *Clearly in this case, where there are no funds out of which the Receiver can pay for the cost of preparing the schedules, the burden should be on the last officers and stockholders of the corporation.*

It will be ordered that the schedules be prepared and filed in this Court by Mr. Saul Rosenbloom on or before September 15, 1975." (Emphasis added).

The order that followed directed that "Saul Rosenbloom, former president of Knight Press, Inc., of Maryland" file the schedule of property and debts in compliance with Md. Rule BP2. Such schedule was not filed in the time prescribed by the order and, again, the Receiver ignored subsection b. of Md. Rule BP2 which mandates that if the debtor fails to comply, the receiver "shall" do so. This time the Receiver moved against *Benjamin* Rosenbloom, the sole stockholder and board chairman of Knight Press. "Appli-

cation to Compel Benjamin Rosenbloom to Comply with Rule BP2" was filed by the Receiver and again the chancellor acquiesced, ordering "Benjamin Rosenbloom, former Chairman of the Board and sole stockholder of the Defendant [to] file schedules of the Debtor's property and debts in compliance with Rule BP2. . . ." On the same day, the chancellor compounded that error by holding *Saul* Rosenbloom (the corporate president) in contempt, ordering him "committed to [the] custody of the Sheriff of this county to be confined until he shall obey the said lawful order of the Court."

On October 1, 1975, both Benjamin and Saul Rosenbloom appealed from the orders directing them to file schedules pursuant to Md. Rule BP2. No appeal was filed from the contempt order directed at Saul Rosenbloom dated September 19, 1975. However, it is apparent that if the order upon which the contempt order is based is without merit, it too must fall.

Inexplicably, two days after appeal was noted, an "Application for Accountant" was filed reciting that a named Accountant had agreed to act if approved, on a contingent fee basis. It stated that the accountant " . . . is willing to . . . gamble on the ultimate results in view of the fact that he well realizes that at the present time there is not one penny in the estate." The chancellor signed the order on October 3, 1975. If such action has mooted the controversy, we have not been so apprised, nor can we take judicial cognizance of that order since the chancellor had no authority to so act in this case after an appeal had been entered. The Court of Appeals has held as a general principle that the entry of an appeal divests the circuit court of its jurisdiction and it may not take further action upon the order appealed from "and any matters embraced therein." *Bullock v. Director,* 231 Md. 629, 633. See also *State v. McCray,* 267 Md. 111, 145; *Vancherie v. Siperly,* 243 Md. 366, 375; *Dietrich v. Anderson,* 185 Md. 103, 111; *Eastern States Corp. v. Eisler,* 181 Md. 526, 535-536. Would it were not so that we might proceed no further. But proceed we must.

Appellants ask three questions, only two of which are subject to this appeal: [2]

"1. May the former officer of a corporation in involuntary receivership, be compelled to prepare or cause to be prepared at his own expense, schedules of the property and debts of the insolvent corporation and to file same in the receivership proceedings?

2. May a former director and/or sole stockholder of a corporation in involuntary receivership, be compelled to prepare or cause to be prepared, at his own expense, schedules of the property and debts of the insolvent corporation and to file same in the receivership proceedings?"

The issues have become obfuscated partly because of the skeletal record from which we write. Because our decision in this case depends upon the interpretation of Md. Rule BP2,[3]

---

2. Question 3 reads as follows:

"May the Court issue an *ex parte* writ of attachment for contempt for a former officer's failure to file schedules?"

In response to that question, under which appellants argue for reversal, we have already indicated that appellants have not appealed from the contempt order. Their orders of appeal each specify and describe the order for compliance with Rule BP2 as the basis of the appeals. Neither refers to the order in contempt. We, therefore, may not address the issue raised of whether an ex parte contempt order is illegal.

3.
"RULE BP2. SCHEDULE OF DEBTOR'S PROPERTY AND DEBTS.

a. *Preparation and Filing by Debtor.*
Within fifteen days after assumption of jurisdiction by the court over the estate of an assignee, or the appointment of a receiver, (unless the time be extended by the court for good cause shown) the debtor shall cause to be made and filed with the clerk, a schedule under oath, containing:
(1) His name, occupation, place of residence and name and address of his business;
(2) An itemized description of his property showing the nature and location thereof, any incumbrances thereon, and the value of the same, according to the best of his knowledge;
(3) A list of all his creditors, designating those whose claims are contingent, unliquidated, or disputed, and unpaid or accrued taxes, the residence or place of business of each creditor, the sum owing to, or claimed by, each creditor, with the actual consideration therefor, and a statement of any security for the payment of the same;
(4) A description of any property which he has transferred or disposed of, other than in the ordinary course of business, to a spouse during the

it is unnecessary to respond directly to the questions as they are asked.

Our review of the record and of the provisions of Rule BP2 convinces us that the chancellor erred in issuing the orders from which this appeal is taken. He committed not one error but three, by 1) ignoring the alternative provided by Rule BP2.b. in the event that the debtor fails to file a schedule; 2) issuing a contempt order for failure to comply with the rule without any finding that such failure was *wrongful* as required by subsection b.3.; and 3) attempting to "pierce the corporate veil" of the debtor by ordering the director and shareholder to do that which was required of the "debtor" under the provisions of the rule.

The chancellor fell into the interpretive trap, probably

---

three years immediately preceding the making of such assignment or appointment of such receiver, and to anyone other than a spouse during a period of one year immediately preceding the same, and as to each such transfer or disposition, the date thereof, the consideration therefor, and the disposition of such consideration, the person to whom the property was transferred or how it was disposed of, and, if the transferee is a relative, the relationship; and

(5) Any exemption claimed by the debtor.

b. *Failure to File — Filing by Assignee or Receiver.*

1. When Required.

If the debtor fails to file the schedule within the time provided for in section a of this Rule, the assignee or receiver shall, within fifteen days after the expiration of such period, cause such schedule to be made and filed with the clerk. Such schedule shall include the information required by section a of this Rule insofar as the assignee or receiver is able to supply such information, except that—

    (a) the assignee or receiver need not assign specific values to each item of property belonging to the debtor; and

    (b) the list of creditors furnished pursuant to section a (3) of this Rule need not state whether the claims are contingent, unliquidated or disputed, nor state which creditors have claims for unpaid or accrued taxes.

2. Debtor or Other Person May Be Compelled to Disclose Information.

The court may, at any time, order a debtor who is delinquent in filing such schedule, and any other person possessing information relative thereto, to appear before the court or an examiner, and disclose any knowledge or information such debtor or other person may possess which is necessary to the proper making of the schedule.

3. Failure to File Schedule or Disclose Information — Punishment by Contempt.

A debtor who wrongfully fails to file a schedule, pursuant to section a of Rule BP2, or a debtor or other person who wrongfully refuses to comply with an order to disclose information, pursuant to subsection 2 of this section b, may be punished for contempt."

unintentionally laid by the Receiver who had obviously misread Md. Rule BP2, of invoking the penalty provision of the rule against the debtor who failed to file a schedule within the time provided. Subsection a. of that rule places the *primary* responsibility for filing the required schedule upon the *debtor* and subsection b.1. places upon the *receiver* the *secondary* responsibility for the schedule's filing. Both the chancellor and Receiver obviously misread subsection b.3. as an alternative to subsection b.1.

The Receiver might complain (had he filed a brief) that, in the event of failure by the debtor to file the schedule because of lack of funds, it is more unjust to compel the Receiver to assume that responsibility than to lay it personally upon the officers, directors and shareholders. We do not agree.

In the first place, as we have indicated, the rule does not permit that alternative. Moreover, requiring the Receiver to advance the costs of preparation of a schedule, to whatever extent costs may be incurred, is consonant with the principle that the debtor's property is entrusted to the receiver as an officer of the court and is in *custodia legis* awaiting ultimate disposal by the court according to the rights and priorities of the parties concerned. *Williams v. Messick*, 177 Md. 605, 610. Since the receiver in most instances, as in this case, is entrusted with the care of that property after petitioning the court on behalf of one or more of the creditors who will benefit by the location of assets, equity is not affronted by requiring the prospector to provide his own stake. We think that the provisions of Md. Rule BP2.b.1. clearly anticipate the logical next step to be followed when the debtor fails to file a schedule, *i.e.*, the receiver shall do so.

The officers of a corporation for which a receiver has been appointed may, of course, be compelled to disclose information to the receiver which is necessary for the preparation of the schedule or to produce corporate records in their custody for that purpose. It is apparent, and we judicially notice, that both the president and the board chairman are charged with the knowledge of all of the facts and information required in the schedule called for by Md.

Rule BP2.a. Subsection b.2. of Md. Rule BP2 makes clear that a delinquent debtor and any other person, whether a corporate officer or not, having knowledge of such information or its whereabouts may be ordered "to appear before the court or an examiner, and disclose any knowledge or information . . . necessary to the proper making of the schedule." That provision obviously contemplates a debtor (individual or corporate) who may fail to file for reasons that are *not* wrongful, *i.e.*, delinquent but not wrongfully so. When read in conjunction with the next subsection, it brings into play the alternative provision for the receiver to assume the filing responsibility with the necessary information being compulsorily provided by the delinquent debtor.

Subsection 3 of the Rule provides for punishment by contempt, but only for "[a] debtor who *wrongfully* fails to file a schedule . . . or other person who *wrongfully* refuses to comply with an order to disclose information, pursuant to subsection 2 of this section b. . . ." (emphasis added). Presumably, that penalty is not available for mere delinquency in filing or simple refusal to disclose. Rather, to be punishable, the conduct must be wrongful. Before a judgment of wrongdoing may be rendered, the reasons for the failure to file (or the failure to disclose) must be ascertained by the court. While the contempt order in this case is not before us on appeal, it is apparent that it was not predicated on a finding that Saul Rosenbloom had " . . . wrongfully refuse[d] to comply with an order to disclose information," Md. Rule BP2.b.3., but rather that the corporate debtor had simply failed to file a schedule without regard to the reason therefor. We emphasize that the court is not precluded from ordering corporate officers to *disclose* or *surrender* information pursuant to Md. Rule BP2.b.2.; nor is it precluded from enforcing such an order through its contempt power pursuant to Md. Rule BP2.b.3. But before contempt is available as a punishment for failure to disclose, the court first must be satisfied by evidentiary offerings that the failure to disclose was *wrongful*. In any case, the purpose and effect of the orders here, directing Benjamin and Saul Rosenbloom personally to provide the costs of

preparing the schedules to fulfill the corporate debtor's responsibility, are clearly distinguishable from an order directing them to disclose the information necessary for the preparation of such a schedule.

The first two errors by the chancellor then led to a third, which he—more consciously committed. Although the "defendant" which was the subject of the Receiver's prayer was the corporation Knight Press of Maryland, Inc., the ex parte order of the court signed pursuant to Rule BP2.b.3., ordered "Saul Rosenbloom, President of the defendant, [to] file the schedules of the debtor's property and debts, in compliance with Rule BP2. . . ."

Since the procedure followed by the chancellor was erroneous for the reasons previously noted, we need not decide whether the officer and shareholder in this particular instance may be equated with the corporate debtor. It will suffice to reflect that a corporation will be regarded as an independent person, Brune, *Maryland Corporation Law and Practice,* § 371 (rev. ed. 1953), and its shareholders will not be held personally liable for the debts or other obligations of the corporation except where necessary to prevent fraud or to enforce a paramount equity. *Damazo v. Wahby,* 259 Md. 627, 633. A similar rule provides that the corporate veil protects officers' and directors from personal liability. *Cf. A. B. Corporation v. Futrovsky,* 259 Md. 65, 79; *Ace Development Co. v. Harrison,* 196 Md. 357, 366-367; *Ex Parte Garey,* 202 Md. 11, 17.

Because the procedure provided by the rule was not followed below, the orders appealed from are vacated.

> *Orders dated September 3, 1975 and September 19, 1975, as described in the orders for appeal, vacated.*
>
> *Costs to be paid by appellee.*