**Patty Neal SPIKER, etc., Plaintiff,**

v.

**CAPITOL MILK PRODUCERS COOPERATIVE, INC., et al., Defendants and Third-Party Plaintiffs,**

v.

**Willie Lee LOYD, Third-Party Defendant.**

**Civ. A. Nos. 82–0128–H, 82–0129–H, 82–0142–H and 82–0143–H.**

United States District Court, W.D. Virginia, Harrisonburg Division.

Nov. 29, 1983.

Thomas V. Monahan, Leesburg, Va., for plaintiff.

Brian J. Donato, Charlottesville, Va., for defendants.

## MEMORANDUM OPINION

MICHAEL, District Judge.

This diversity action arises out of the collision on August 16, 1980, between a car operated by Willie Lee Loyd and a Capitol Milk truck operated by Melvin Smith. The Capitol Milk truck had pulled off onto the emergency lane of Interstate 81 in Shenandoah County, Virginia, when the car left the main lanes of the highway and struck the parked truck. Four of the seven occupants in the car were killed as a result of the accident. The plaintiff filed the complaints in these four consolidated actions on August 6, 1982, on behalf of the estates of two of the passengers killed in the accident.

Previously, the estate of another passenger killed in the accident brought suit in this court against Capitol Milk, Melvin Smith, and Willie Lee Loyd. A trial on the merits ensued, with a jury verdict returned in favor of the defendants Capitol Milk and Melvin Smith. The court had already entered a default judgment against Willie Lee Loyd.

The defendants and third-party plaintiffs in the present suit, Capitol Milk and Melvin Smith, now seek to dismiss this action on grounds of collateral estoppel, based on the favorable jury verdict in the earlier action in this court brought by the estate of the other passenger. This motion to dismiss has been fully briefed and argued and is now ripe for disposition.

As the defendants point out, diversity of citizenship provides the jurisdictional basis for both the present and the earlier suits; moreover, the substantive allegations in the present and former suits are the same. The question thus becomes whether principles of *res judicata* preclude this plaintiff not a party to the first suit from relitigating the liability of the defendants.

### I.

■ The first issue to be decided is whether federal or state concepts of *res judicata* govern in this diversity suit. In the context of what preclusive effect should be given a previous state court judgment by a federal court sitting in diversity, authority supports applying the substantive law of the state in which the federal court sits. *See Graves v. Associated Transport, Inc.*, 344 F.2d 894, 896 (4th Cir.1965) (applying Virginia law on mutuality rule of collateral estoppel); *Alderman v. Chrysler Corp.*, 480 F.Supp. 600, 603 (E.D. Va.1979) (applying Virginia law on privity rule of collateral estoppel). Where, however, the first judgment is one rendered in a federal forum, different considerations apply. One of the strongest policies a court can have is determining the scope of its own judgments. *See J. Aron & Co. v. Service Transportation Co.*, 515 F.Supp. 428, 440 (D.Md.1981), quoting *Kern v. Hettinger*, 303 F.2d 333, 340 (2d Cir.1962). The Restatement (Second) of Judgments § 87 (1980) provides that "[f]ederal law de-

termines the effects under the rules of res judicata of a judgment of a federal court." While federal law may govern, the federal court may well choose to adopt state *res judicata* rules where the principles in question concern substantive rather than procedural policies. In the latter, a federal rule should probably be followed. As to the former, however, *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) and its progeny, particularly *Byrd v. Blue Ridge Rural Electric Cooperative, Inc.,* 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958), suggest that state law should govern. *See* 18 C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure* § 4472 (1981). For example, the concept of "privity" in *res judicata* doctrine reflects a distinctly substantive policy, because privity arises from "considerations going to stability of legal relationships—not unlike definitions of property." Restatement (Second) of Judgments § 87 comment b (1980). Consequently, this court shall apply federal law when considering the effects of a previous judgment in this court; nevertheless, state law will be adopted where substance rather than procedure is at stake.

## II.

■ The defendants are not asserting that offensive or defensive use of collateral estoppel is involved in this case. In offensive use of collateral estoppel, preclusion is used as a "sword" by a nonparty against a defendant who *was* a party to the first suit. In defensive use of collateral estoppel, on the other hand, preclusion is used as a "shield" by a defendant *not* a party to the first suit against a plaintiff who *was* a party to the first suit. In neither case, however, is a nonparty bound by the judgment in the first suit. The defendants here, though, wish to invoke collateral estoppel against one not a party to the action on which estoppel is based. Such an argument flies in the face of the basic principle of collateral estoppel that parties to a prior action may be bound but nonparties are not bound. This fundamental premise arises out of our deep-rooted historic tradition that everyone should have his own day in court. *See Alderman v. Chrysler Corp.,* 480 F.Supp. 600, 607 (E.D.Va.1979). As one commentator observes,

> Binding a nonparty on the basis of a judgment in an action in which he did not participate, and of which he may not even have been aware, also conflicts with important values basic to our judicial system: the right of a litigant to present his arguments to a tribunal before having his rights adjudicated, and the importance of such personal participation to the fairness of the decision-making process.

Note, *Collateral Estoppel of Nonparties,* 87 Harv.L.Rev. 1485, 1496–97 (1974). Certainly, this interest in not binding a nonparty is important; extremely powerful countervailing interests would have to be put forward by the defendants to justify its being overridden.

■ One exception to this general rule of not binding a nonparty is where the nonparty to the first suit was in "privity" with a party to the first suit. Such a relationship may extend to those persons who were not formal parties to the first litigation but who actively participated in it. A successor in interest to property, a principal and surety, or master and servant are other familiar examples of the privity concept where a nonparty may be bound by a previous judgment. *See generally* 18 C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure* § 4448 (1981).

As noted above, this court will look to the law of Virginia in examining the reach of the privity notion. The Supreme Court of Virginia has defined privity in the context of collateral estoppel as follows:

> It is generally held that "privity" means a mutual or successive relationship to the same rights of property, or such an identification in interest of one person with another as to represent the same legal rights, and the term "privy," when applied to a judgment or decree refers to one whose interest has been legally represented at trial.

*Kesler v. Fentress,* 223 Va. 14, 286 S.E.2d 156, 157 (1982), quoting *Patterson v. Saunders,* 194 Va. 607, 613, 74 S.E.2d 204, 208 (1953). Apart from the plaintiff's decedents in this action being passengers in the same automobile with the previous plaintiff's decedent, no other indicia of a privity relationship appear to the court. Moreover, the court is mindful of the decision in *Anderson v. Sisson,* 170 Va. 178, 196 S.E. 688 (1938), where in the first suit the named plaintiff was acting in a representative capacity as next friend of his injured minor child injured in a common accident with his other minor child. The plaintiff in the representative capacity as next friend for the *other* injured minor child then tried to use a judgment in his favor against the same defendant in a second suit. The court held that the "mere fact that the father was named as the next friend of both minors for the purpose of instituting the actions did not make the causes of action less separate and distinct." *Id.,* 196 S.E. at 689. This case does not address the privity issue explicitly, but it illustrates that Virginia appears unwilling to expand the concept of privity, as the relatively narrow definition in *Kesler* further demonstrates.

██ In this case, privity does not exist between the passenger whose representative brought the first suit in this court and lost and the two passengers whose interests are represented by the plaintiff in the present suit in this court. The three were passengers in the same car, killed in a common accident. This limited link, however, does not rise to a privity relationship. As an eminent authority observes, even where members of the same family are injured or killed in an automobile accident

> [e]ach has an independent cause of action for personal injuries, free from [claim or issue] preclusion ... for the same reasons as apply to nonpreclusion among unrelated nonparties. There may be direct and obvious conflicts of interest, ... [or] any one family member might often provide inadequate or even hostile representation of another.

18 C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure* § 4459 (1981). If family members in a common accident are not considered in privity for purposes of collateral estoppel, *a fortiori* this plaintiff should not be collaterally estopped from litigating the liability of these defendants by the jury verdict for the defendants in the first action, where, as here, there is no family relationship involved.

The defendants nonetheless point to a trend in the Fifth Circuit Court of Appeals where the concept of "virtual representation" weighs in the definition of privity for determining when a nonparty may be bound. *See, e.g., Aerojet-General Corp. v. Askew,* 511 F.2d 710 (5th Cir.), *cert. denied,* 423 U.S. 908, 96 S.Ct. 210, 46 L.Ed.2d 137 (1975); *Cauefield v. Fidelity & Casualty Co.,* 378 F.2d 876 (5th Cir.), *cert. denied,* 389 U.S. 1009, 88 S.Ct. 571, 19 L.Ed.2d 606 (1967). "Virtual representation" identifies a nonparty who shares such an identity of interests with the party to the first litigation that he should be precluded from relitigation. Even were this court to follow this line of cases that greatly expand the concept of privity, which it expressly declines to do in light of the court's decision that state law shall govern the substantive concept of privity, the court notes that the facts of this case do not fit within the virtual representation theory. First of all, the plaintiff in the present action did not participate at all in the first adjudication. A new attorney is directing this second litigation; new legal theories may well be asserted; experts may be called in this case, although the fact witnesses will likely be the same in both cases. Second, the defendants have not alleged, nor is there any evidence whatsoever that there was any deliberate or collusive tactical maneuvering by the plaintiffs in the two actions. The mere fact that the second suit is clearly related to the first and that the same judge is involved would not invoke the virtual representation theory even were this court to follow the *Cauefield-Aerojet* line of cases.

In conclusion, collateral estoppel does not apply to this situation. A nonparty is not

bound by the results of a prior litigation in these circumstances. An appropriate order shall this day issue denying the defendants' and third-party plaintiffs' motion to dismiss.