643 A.2d 920

**John H. DOUGLAS**

v.

**FIRST SECURITY FEDERAL SAVINGS BANK, INC., et al.**

**No. 1830, Sept. Term, 1993.**

Court of Special Appeals of Maryland.

July 5, 1994.

Certiorari Denied Nov. 10, 1994.

John H. Douglas, Fort Washington, for appellant.

Judith R. Catterton (Catterton & Kemp, on the brief for appellees, First Security, Rector, Marienthal, Dauphin and Hudson), Rockville.

John S. Vander Woude (Eccleston & Wolf, P.C., on the brief for appellees, Greenberg, Maddox & Shelton, Chartered, Layou and Witt), Baltimore.

Before MOYLAN, CATHELL, ROSALYN B. BELL (retired, specially assigned), JJ.

CATHELL, Judge.

John H. Douglas, appellant, appeals from a decision of the Circuit Court for Prince George's County dismissing his complaint against First Security Federal Bank (bank), several

bank employees, members of the law firm representing the bank, and several of the firm's employees (hereinafter referred to collectively as "appellees"). Appellant's complaint, alleging fraud, wrongful foreclosure, and violation of Maryland property statutes, was dismissed as barred by the doctrine of *res judicata*. After final judgment was entered by the circuit court, appellant filed a notice of appeal, but, before transmission of the record to this Court, appellant filed an additional affidavit with the circuit court clerk. Appellees objected to its inclusion in the record and moved the circuit court to strike the affidavit from its record and the record on appeal. That motion was granted. Appellant filed a second appeal from the order striking his affidavit and moved to consolidate the appeals.

Appellant presents seven issues, which we reformulate and consolidate as follows:

A. Whether the trial court erred in striking the "Second Affidavit of John H. Douglas" from the circuit court record and the record on appeal.

B. Whether the trial court properly applied Maryland law to the *res judicata* issues raised.

C. Whether the trial court erred in finding that appellant's participation in a prior suit was sufficient to actuate the principles of *res judicata*, and that application of *res judicata* principles barred appellant's suit.

Appellant also asks whether the trial court properly dismissed his case "in light of [the] fact [that] Judge Ross denied Appellees' motion to dismiss the Baker's [sic] suit?" We shall answer this question in summary fashion after our discussion of the facts.

### Facts

In June, 1989, Vinson and Danella Baker (the Bakers) entered into a contract to purchase, from appellant, an undeveloped lot in Fort Washington, Maryland. The Bakers agreed to purchase the lot alone for $61,000, and appellant agreed to take back a mortgage of $15,000, contingent upon

the Bakers obtaining other financing for the balance. The Bakers eventually secured a loan from the bank in the amount of $185,000 to finance the lot and construction of a home. Appellant agreed to increase the amount of the mortgage he would take back to approximately $22,000 and to subordinate his mortgage to the banks' mortgage in order to help the Bakers secure the bank loan. The loan settled on November 15, 1989. There was a dispute as to the loan's draw schedule, and the Bakers eventually defaulted on the loan from the bank.

The bank initiated foreclosure proceedings. Soon after, the Bakers filed an action against the bank in the United States District Court for the District of Columbia, alleging breach of contract and requesting a temporary restraining order to stop the foreclosure proceedings in Prince George's County. The court allowed the Bakers to dismiss this first suit without prejudice and refile it in the Circuit Court for Prince George's County. They did so and requested an ex parte injunction to stay the foreclosure. The circuit court granted a temporary injunction pending a full hearing on the merits. A hearing was held on the merits and the injunction denied. Thereafter, the court declined to set the sale aside.

Approximately two months later, the Bakers filed a bankruptcy petition in the United States Bankruptcy Court for the District of Columbia. Appellant, based upon his status as a subordinate lien (second mortgagee) holder, unsuccessfully attempted to intervene in that proceeding. The Bakers thereafter filed suit against the bank, this time in the United States District Court for the Eastern District of Virginia, alleging, among other things, bank fraud and wrongful foreclosure. Appellant, apparently in an effort to enhance his subordinate position, entered into a retainer agreement with the Bakers and their attorney prior to the Virginia federal court action. Appellant agreed, under specified circumstances, to pay the Bakers' costs and attorney's fees; the agreement also entitled him to receive fifty percent of any net recovery in the Bakers' suit against the bank. Appellant attended at least one deposition in preparation for the Virginia suit, and met with witness-

es and counsel on several occasions. All counts in the Virginia suit were disposed of either by motion to dismiss or summary judgment, and the Bakers appealed to the Fourth Circuit Court of Appeals.

Vinson Baker states, in an affidavit included in the record extract, that appellant chose his attorney for the bankruptcy and Virginia actions, paid his legal fees, located witnesses and directed strategy for the litigation. Appellant and the Bakers' former attorney each filed an affidavit denying that appellant retained the attorney for the Bakers, chose the forum for, or controlled that litigation.

On November 11, 1992, appellant and the Bakers each filed separate suits against appellees in the Circuit Court for Prince George's County, alleging fraud and wrongful foreclosure, among other things. Appellees filed motions to dismiss in both cases. The Bakers subsequently entered into a settlement agreement with appellees and dismissed their circuit court action and the appeal pending before the Fourth Circuit. The circuit court, on March 11, 1993, dismissed appellant's suit. Appellant filed a motion to reconsider and, after extensive briefing and oral argument, the circuit court, in a twenty-six page written opinion filed on November 8, 1993, denied his motion and dismissed his complaint as being barred by the doctrine of *res judicata*. Appellant filed a timely notice of appeal on November 15, 1993. On December 21, 1993, appellant filed an affidavit with the circuit court clerk; appellees objected and the court struck the affidavit from the record. Appellant appealed that order, and today we address the propriety of both of the circuit court's orders.

■ Appellant argues that the "court should not have initially dismissed [appellant's] complaint in light of [the] fact that another Prince George's County Judge denied Appellees' motion to dismiss the Bakers' suit." Appellant offers no authority for the proposition that circuit court judges are bound by the rulings of their brethren in separate cases, or as to why a ruling in a case he claims is unrelated to his should affect the court's decisions in his case. In *Washburne v.*

*Hoffman,* 242 Md. 519, 525, 219 A.2d 826 (1966), the Court of Appeals said: "While we are confident Judge Turnbull's colleagues on the Baltimore County court, or, indeed, the court of any other county, would consider his decisions very persuasive, we cannot agree that they are in any sense binding." In fact, prior circuit court decisions are not always binding on the same case. *State v. Frazier,* 298 Md. 422, 449, 470 A.2d 1269 (1984) ("As a general principle, one judge of a trial court ruling on a matter is not bound by the prior ruling in the same case by another judge of the court. . . ."). Appellant's assertion that contradictory decisions in separate cases in the circuit court are "unconscionable" does not constitute a legal basis for reversing the circuit court's dismissal of his complaint.

### A.

We shall first address whether the trial court erred in striking appellant's "second affidavit" from the record in this case. Appellant filed his notice of appeal with the circuit court on November 15, 1993. The "Second Affidavit of John H. Douglas" was filed with the circuit court on December 21, 1993, thirty-six days after the appeal was filed. The record had not yet been transmitted from the circuit court to this Court.

We initially note that the trial court properly ruled on appellees' motion to bar inclusion of the "second affidavit" in the record on appeal. Maryland Rule 8–413(a) states that "[t]he lower court, by order, shall resolve any dispute whether the record accurately discloses what occurred in the lower court, and shall cause the record to conform to its decision."

Generally, however, the circuit court loses jurisdiction over all issues raised on appeal when the appeal is filed. *Gilliam v. Moog Indus., Inc.,* 239 Md. 107, 112, 210 A.2d 390 (1965); *TJB, Inc. v. Arundel Bedding Corp.,* 63 Md.App. 186, 195, 492 A.2d 365 (1985); *Link v. Link,* 35 Md.App. 684, 686, 371 A.2d 1146 (1977); *Rosenbloom v. Electric Motor Repair Co.,* 31 Md.App. 711, 715, 358 A.2d 617 (1976). Therefore,

when the appeal in the instant case was noted, the circuit court lost jurisdiction to take evidence. Further, the appellate court has a purely appellate function; we have no power to consider documents not considered by the trial court in reaching its decision when we review its decision. *Burke v. Burke,* 204 Md. 637, 646, 106 A.2d 59 (1954).

Both parties rely on the Court of Appeals's decision in *Burke* to support their arguments. The appellant in *Burke* filed a "Petition to Amend Appeal," in which he sought to renounce part of a stipulation agreed to at trial and to incorporate certain documents into the record that were not part of the record below. *Id.* at 645–46, 106 A.2d 59. The Court of Appeals stated:

The appellant by these petitions attempts, not only to repudiate a part of his stipulation, but also to introduce additional evidence in the case. We have no power to inspect documents or consider evidence which was not offered below to determine whether the findings were correct. . . . " . . . We must deal with cases as they are brought before us by the record transmitted from the Court below, and we have no power, whilst reviewing a particular order from which an appeal has been taken, to receive evidence or to remand the record for the Court below to hear testimony on totally different questions that in no way reflect on the only issue brought to this Court for review."

*Id.* at 646, 106 A.2d 59 (citations omitted) (quoting *Stanley v. Safe Deposit & Trust Co.,* 87 Md. 450, 40 A. 53 (1898)).

Appellant contends that the latter portion of the above quote from *Burke* suggests that we may review evidence not submitted below if it touches on the issues on appeal, but not if it touches different questions. Appellant misinterprets the case and misreads the sentence in question. The Court of Appeals stated that we have no power to receive evidence *or* remand for testimony on new questions. This phrase is disjunctive; it establishes that we lack the power to take either action. The correct interpretation of this language in *Burke* is that this Court cannot receive evidence not admitted

before the trial court. It does not matter that appellant filed the affidavit with the circuit court clerk. The circuit court no longer had jurisdiction in the case.

We also reject appellant's reliance on *Hartley v. State*, 238 Md. 165, 208 A.2d 72 (1965), where, in a criminal appeal, the Court of Appeals considered the transcript of a post conviction proceeding in order to avoid a substantial injustice. The trial court's ruling will not result in a substantial injustice in the instant civil case.

The trial court requested memoranda from the parties on appellant's motion for reconsideration. The memoranda were due on August 6, 1993, and appellant submitted his on August 4, 1993. Appellant states that he was unable to rebut statements made by appellees in their memoranda, submitted to the trial court on August 6, 1993. The final order in this case, however, was not entered until November 8, 1993. Appellant had three months in which to submit relevant evidence to the trial court. He did not. Further, it was appellant who, seven days after the final judgment, filed the notice of appeal, divesting the circuit court of jurisdiction to consider additional evidence in this case.

■ Our role is to review the trial court's decision in light of the evidence before it at the time the decision was made. *See generally,* Md.Rule 8–131(a). It is apparent from appellant's discussion of this issue in his brief that his affidavit addressed facts known to him from the commencement of this litigation and, further, that the averments in the "second affidavit" are all contained elsewhere in the record. The trial court did not err in ordering "that the 'Second Affidavit of John H. Douglas' shall not constitute any part of the record or record extract for appeal."

### B.

■ Appellant contends that the trial court erred in applying Maryland law to the *res judicata* issues. The trial court found that appellant's complaint was *res judicata* because of the decision of the United States District Court for the

Eastern District of Virginia. In determining the preclusive effect of a federal case on state court proceedings, the general rule is that federal law applies; however, when the application of *res judicata* touches substantive state law issues, such as privity or the legal relationships of parties, we hold that state law applies. *Brooks v. Arlington Hosp. Ass'n,* 850 F.2d 191, 195 (4th Cir.1988); *Harnett v. Billman,* 800 F.2d 1308, 1312–13 (4th Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1571, 94 L.Ed.2d 763 (1987); *Spiker v. Capitol Milk Producers Cooperative, Inc.,* 577 F.Supp. 416, 417–18 (W.D.Va.1983).

*Spiker* squarely addressed the issue of what preclusion law applies when the first judgment is rendered in a federal forum.

> [S]tate *res judicata* rules [may well apply] where the principles in question concern substantive rather than procedural policies. In the latter, a federal rule should probably be followed. As to the former, however, *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) and its progeny, particularly *Byrd v. Blue Ridge Rural Electric Cooperative, Inc.,* 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958), suggest that state law should govern. *See* 18 C. Wright, A. Miller, & E. Copper, *Federal Practice and Procedure* § 4472 (1981). For example, the concept of "privity" in *res judicata* doctrine reflects a distinctly substantive policy, because privity arises from "considerations going to stability of legal relationships—not unlike definitions of property." Restatement (Second) of Judgments § 87 comment b (1980).

*Spiker,* 577 F.Supp. at 418. *See also Arlington Hosp. Ass'n,* 850 F.2d at 195; *Harnett,* 800 F.2d at 1313 (both acknowledging, but not applying, the exception).

In *Spiker,* a passenger car struck a milk truck parked in the emergency lane of a highway; four of the car's passengers died as a result of the accident. 577 F.Supp. at 417. The estate of one passenger sued the defendants. The jury returned a defense verdict. The other plaintiffs in the case then brought suit on the same substantive allegations. "The question thus becomes whether principles of *res judicata* preclude

this plaintiff not a party to the first suit from relitigating the liability of the defendants." *Id.* The court held that whether the plaintiffs were in privity with the plaintiff in the first suit was a substantive question of law, and thus, state law (Virginia law in that case) should be applied when deciding the issue.

Appellant makes the disjointed argument that "[s]ince the trial court found that Appellant was not in privity with Baker, then the application of *res judicata* does not touch on privity and thus federal law, not state law, governs the preclusive effects of *res judicata* (claim or issue preclusion). The trial court made decisions out of sequence." It is appellant's argument, not the trial court's decision, that is out of sequence. Determining privity or the identification of parties is an *element* of a *res judicata* analysis. The court must first decide if privity or some other substantive issue must be decided; if it must, then state law governs. In other words, when determining whether a federal court judgment is *res judicata* as to a state court proceeding, the court looks to see if privity, the legal relationship of the parties, or some other substantive issue must first be decided; if it must, then state *res judicata* analysis properly governs.

■ In the case at bar, the preclusion issue is one of more than simply the scope and effect of a prior United States District Court judgment. *See Arlington Hosp. Ass'n,* 850 F.2d at 195. There is a significant issue as to appellant's privity with the plaintiffs in the federal district court suit or as to whether he was sufficiently involved in that litigation to be considered a party. We have discovered no Maryland cases addressing the issue of whether federal or state law applies in the instant situation. The federal cases discussed above make a persuasive case for applying state law. We, therefore, hold that identity of parties is a substantive issue that must be decided by applying state law. The trial court properly determined that Maryland *res judicata* law applies.

## C.

Appellant alleges that the circuit court erred in determining that he was sufficiently involved in the Virginia action to be

considered a party for purposes of *res judicata,* and argues, therefore, that his circuit court claim is not precluded.

The Court of Appeals addressed the doctrine of *res judicata* in *DeLeon v. Slear,* 328 Md. 569, 579–80, 616 A.2d 380 (1992):

> In *Alvey v. Alvey,* 225 Md. 386, 390, 171 A.2d 92, 94 (1961), this Court set forth the traditional rule of res judicata as follows:
>
> > "The doctrine of res judicata is that a judgment between the same parties and their privies is a final bar to any other suit upon the same cause of action, and is conclusive, not only as to all matters that have been decided in the original suit, but as to all matters which with propriety could have been litigated in the first suit...."
>
> The rule is designed to avoid the " 'expense and vexation attending multiple lawsuits, conserve judicial resources, and foster reliance on judicial action by minimizing the possibilities of inconsistent decisions.' " *Murray International Freight Corp. v. Graham,* 315 Md. 543, 547, 555 A.2d 502, 503–504 (1989), quoting *Montana v. United States,* 440 U.S. 147, 153–154, 99 S.Ct. 970, 973–974, 59 L.Ed.2d 210, 217 (1979).

Recently, in *Major v. First Virginia Bank,* 97 Md.App. 520, 533–34, 631 A.2d 127 (1993), we reiterated the elements of *res judicata.*

> Under Maryland law, the requirements of *res judicata* or claim preclusion are:
>
> > 1) that the parties in the present litigation are the same or in privity with the parties to the earlier dispute, 2) that the claim presented in the current action is identical to the one determined in the prior adjudication, and 3) that there was a valid final judgment on the merits.
>
> *Esslinger v. Baltimore City,* 95 Md.App. 607, 616–17, 622 A.2d 774 (1993) (citing *Cassidy v. Bd. of Educ.,* 316 Md. 50, 57, 557 A.2d 227 (1989)). *See also Jenkins v. Cameron & Hornbostel,* 91 Md.App. 316, 334–35, 604 A.2d 506, *cert. denied,* 327 Md. 218, 608 A.2d 780 (1992); *Lone v. Mont-*

*gomery County,* 85 Md.App. 477, 490–91, 584 A.2d 142 (1991). All three elements must be present for the final judgment in the first claim to bar the subsequent claim. *Id. See also DeLeon,* 328 Md. at 580, 616 A.2d 380. We shall discuss the three elements of *res judicata* separately.

### 1. Same Party or Privity

The trial court found that appellant was not in privity with the Bakers in their federal lawsuit, "if . . . privity is given the generally accepted meaning of one who has succeeded to an estate or interest held by one who was a party to such judgment or decree, if the succession occurred after the bringing of the action." It found, however, that appellant "is considered a party for the purposes of *res judicata* since there existed a right to control the Virginia action—a right which [appellant] consistently exercised." Appellant contends that the trial court erred in determining that he was a party for the purposes of *res judicata.*

*Ugast v. LaFontaine,* 189 Md. 227, 55 A.2d 705 (1947), presents a similar situation. Ugast and his business partners employed Harry Wilson as their bookkeeper. Wilson embezzled approximately $44,000 from the business and lost it gambling at a club owned by LaFontaine. *Id.* at 229, 55 A.2d 705. In a previous action, Wilson sued LaFontaine under a criminal statute allowing a person who lost money gambling to recover the money as a debt owed to the gambler; he recovered $30,000. *Id.* at 230–31, 55 A.2d 705. The judgment awarded to Wilson was entered "to the use of" Ugast and his partners. Ugast and his partners then sued LaFontaine directly to recover the same monies. After discussing the principle of *res judicata,* the Court opined:

> In the case before us the subject matter is the same as in the former suit. Both suits were filed by the same attorneys against the same defendants on the same day in the same Court, and both were brought to recover money lost by the same person at gaming tables operated by the same defendants. The evidence that would be needed to establish the allegations in this case would be the same that sup-

ported the former case.... The only difference is that in the former case the gambler brought suit as the loser of the money, whereas in this case the persons from whom the money was stolen claim to be the owners of it. It is evident that the attorneys filed two separate cases in an abundance of caution so that if one case were ruled out the other might be sustained.

*Id.* at 231, 55 A.2d 705. The Court then analyzed the elements of *res judicata,* and reached the issue of identity of parties.

The only remaining question is whether there is an identity of parties. It is well established that a judgment may not be pleaded as *res judicata* by strangers to the action in which it was rendered, but it may be pleaded only by the parties to the action and their privies. Generally, the parties to a suit are those persons who are entered as parties of record. But for the purpose of the application of the rule of *res judicata,* the term "parties" includes all persons who have a direct interest in the subject matter of the suit, and have a right to control the proceedings, make defense, examine the witnesses, and appeal if an appeal lies. So, where persons, although not formal parties of record, *have a direct interest in the suit,* and in the advancement of their interest take open and substantial control of its prosecution, *or they are so far represented by another that their interests receive actual and efficient protection,* any judgment recovered therein is conclusive upon them to the same extent as if they had been formal parties. In the present case plaintiffs took an active interest in the suit filed by the bookkeeper. They were not parties of record at the time of the trial of his case, but they practically took charge of it, and Wilson was actually suing as constructive trustee for them. Thus it is clear that the claim was *res judicata.*

*Id.* at 232–33, 55 A.2d 705 (emphasis added, citations omitted). *See also Prescott v. Coppage,* 266 Md. 562, 572–73, 296 A.2d 150 (1972); *Sterling v. Local 438, Liberty Ass'n of Steam and Power Pipe Fitters,* 207 Md. 132, 144, 113 A.2d 389, *cert. denied,* 350 U.S. 875, 76 S.Ct. 119, 100 L.Ed. 773 (1955).

In the instant case, the trial court found "ample factual evidence to show [appellant] was not [a] stranger to the Virginia action." We agree. This case is, upon close review, strikingly similar to *Ugast*. Here, the Bakers sued the bank, alleging that they were defrauded. The Bakers also owed appellant, by way of the second mortgage, the same money they alleged they were deprived of by the bank—the loan monies. Appellant, through the retainer agreement set forth below, had a stake in any recovery by the Bakers from the bank. When the Bakers lost their suit against the bank, appellant filed his own suit, seeking to recover the same monies he would have recovered had the Bakers won their Virginia suit. Had Wilson in the *Ugast* case lost his suit against LaFontaine, Ugast would have been in the same position as appellant in the instant case.

The facts supporting the trial court's finding that appellant was a party include a retainer agreement signed by appellant and Mr. Baker on February 11, 1992, which states:

Agreement made by and between Vinson L. Baker and Danella M. Baker, first trust holder, and John Douglas, second trust holder. The parties agree to enter into a retainer agreement relating to or involving the filing of a civil suit against First Federal Savings Bank, Inc., et al., (The Bank).

The terms of the agreement are as follows:

1. The Bakers and Douglas agree to pay to their respective legal counsel(s) at a contingency fee of thirty-five percent (35%) of the total recovery or settlement. . . .

2. John Douglas agrees to pay legal fees in the amount of $2,000.00 on behalf of Vinson Baker for legal services in a suit against the bank et al.

3. John Douglas agrees to pay a total of $500.00 for a separate and Independent hearing on a motion to set aside Debtor's Default in Bankruptcy Court.

4. John Douglas agrees to pay a total of $2,000.00 for a civil suit against the bank et al., on his behalf.

5. John Douglas agrees to pay costs of out-of-pocket expenses of [both] suit[s].

6. Vinson Baker will receive fifty percent (50%) of the sixty five percent (65%) recovery or settlement in this matter. . . .

7. John Douglas shall receive fifty (50%) of the sixty-five (65%) of Vinson L. Baker's recovery or settlement, if any.

8. John Douglas shall forgive $28,000.00 owed by the Bakers, if the fraud case goes to final verdict or judgment. . . .

9. If John Douglas drops said suit, then Vinson Baker is forgiven on his $28,000.00 note.

10. John Douglas reserves the right to receive his total 2nd trust note amount of $28,000.00 against any title insurance company or party responsible for the title policy. Mr. Douglas' $28,000.00 shall not be shared with the Bakers if recovery is had against the insurer(s) or any liable party.

11. If settlement is made short of judgment then Vinson L. Baker and Danella Baker shall be released from liability for Douglas $28,000.00.

12. If [Vinson] Baker loses the motion to vacate the default or loses the adversary proceeding re fraud alleged by the bank, this agreement is null and void.

13. If either attorney, Frazer Walton, Jr., Esq. and John C. LaPrade, Esq. in the fraud suit against the Bank withdraws from the suit, for any reason, and both attorneys reserve the right to withdraw, then this agreement is null and void as of the date of withdrawal of either attorney.

Faced with this evidence of, at the very least, an attempt by appellant to gain a direct financial interest in the Bakers' Virginia action, appellant argues that the agreement is not signed by Mrs. Baker, and therefore has no legal effect. Appellant's signature, however, indicates an intent to be bound by the agreement. Had Mrs. Baker signed it at any time, appellant would presumably have been bound by its terms. Putting aside the fact that appellant would likely be arguing otherwise were he entitled to a recovery under the agreement,

it is certainly strong evidence that appellant sought a direct financial interest in the suit, and that his interests were so far represented that he received actual and efficient protection. Appellant's apparent belief that his interests were protected is evidenced by the fact that he agreed to forgive the Bakers' $28,000 debt if the suit was successful, or if he (appellant) chose to terminate his or his attorney's involvement in the suit. One of appellees' counsel, in commenting on the evidence at the hearing on the motion for reconsideration, effectively summed up the agreement's importance:

> But this agreement, I think, speaks volumes as to what their relationship was. There was an agreement that they would split the proceeds of the Virginia suit. There was an agreement that Mr. Douglas would waive his lien against the property of $28,000. And there was an agreement as to counsel. This agreement is void if the two counsel, who Mr. Douglas now denies he had any part in hiring, dismissed themselves from the case....

> Mr. Douglas, I think, very importantly, agrees to pay Mr. Baker's attorney's fees and costs and expenses and such in going forward in the Virginia court. For him to stand up here and say, "I had no persuasion or no involvement in this Virginia case, and I was just an unhappy, innocent bystander," I think, is just—I think this agreement just totally rejects that argument. I just don't think that there's any weight to that argument whatsoever.

The trial court stated in its opinion that "Douglas' *right* to control the proceedings, assert a defense, examine witnesses, and appeal, is directly related to his right to intervene...." There was some disagreement about whether appellant's intervention in the Virginia action would destroy federal jurisdiction. The trial court found that it would not. We need not, however, resolve that question. The fact is that appellant, who was intimately familiar with the litigation and who now presents an almost identical claim, never attempted to intervene in the Virginia action. The trial court cites *Reddick v. State*, 213 Md. 18, 30, 130 A.2d 762, *cert. denied*, 355 U.S. 832, 78 S.Ct. 50, 2 L.Ed.2d 44 (1957), for the "well established

principle of law that a person who has full knowledge of pending litigation and that it affects, and will determine, his rights, and, who is entitled to appear, but who makes no effort to intervene as a party, and permits a conclusion thereof without objection, such person is concluded by the proceedings as effectually as if he were named on the record." *See also Psalmist Baptist Church v. Bd. of Zoning Appeals,* 175 Md. 7, 8–9, 199 A. 815 (1938); *Holt v. Moxley,* 157 Md. 619, 621, 147 A. 596 (1929). There was also evidence below that appellant attended at least one deposition in the Virginia action, that he met with witnesses, and that, even if he did not "choose" their attorney, he introduced the Bakers to their attorney. Mr. Baker, however, submitted an affidavit stating, in essence, that appellant chose his attorney and controlled the Virginia litigation. In response, appellant submitted his own and Mr. LaPrade's (Mr. Baker's attorney) affidavits contradicting Mr. Baker's statement. As to the persuasiveness of Mr. La-Prade's affidavit, the trial court stated:

> There are some problems with Mr. LaPrade's affidavit in that he comes to certain conclusions on his own. He concludes that Mr. Douglas did not select Baker's attorneys. Well, how does he know that? He had no control of the prosecution. I assume that he means he didn't exercise any control over him in his prosecution of the case, but it doesn't really say that. It says he had no control over the prosecution.

Sufficient evidence exists to support the trial court's findings that appellant was involved in the Virginia action, that he had a direct financial interest in the action, that he had the right to intervene in the action (which he chose not to exercise), that he had the *right* it control the litigation, and that his interests were represented and received actual and efficient protection. In light of the law and facts discussed above, and upon our careful review of the record, we hold that the trial court did not err in determining that appellant was a party to the Bakers' Virginia action for purposes of *res judicata.*

**188**

## 2. Same Claim or Cause of Action

Appellant argues that his circuit court case and the Bakers' federal case are not identical because the federal court did not specifically rule on each allegation in appellant's complaint. Whether two claims are identical, however, is not the proper standard of review.

Maryland now applies the "transaction" test when determining whether two cases are the same for the purposes of *res judicata. DeLeon,* 328 Md. at 589–90, 616 A.2d 380; *Kent County Bd. of Educ. v. Bilbrough,* 309 Md. 487, 499, 525 A.2d 232 (1987) (adopting Restatement (Second) of Judgments § 24). Cases are grouped by "transaction" pragmatically, "giving weight to such considerations as whether the facts are related in time, space, origin or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *DeLeon,* 328 Md. at 590, 616 A.2d 380 (footnote omitted); *Bilbrough,* 309 Md. at 498, 525 A.2d 232 (both quoting Restatement, *supra* ).

In the case at bar, there is little doubt that the Bakers' federal action and appellant's circuit court action are based on the same transaction. The two complaints are based on the bank's award of the same loan. In fact, the Bakers' complaint alleged wrongdoing by the bank based on statements made to them and appellant, and appellant's complaint alleges wrongdoing by the bank based on the same statements made to him and the Bakers. Both transactions occurred at the same time, in the same place, and with the same people. Further, the language of appellant's complaint substantially parallels that of the Virginia action.

For these reasons, and because appellant does not argue that the two complaints are based on different transactions, we hold that the claims are the same for the purposes of *res judicata.*

## 3. Final Judgment

The parties do not dispute that the federal court's dismissal of the Baker's claims based upon motions to dismiss and

summary judgment are final judgments. *See DeLeon*, 328 Md. at 580, 616 A.2d 380 (parties do not dispute that summary judgment in federal court is final judgment on the merits). Appellant does not address the issue in his brief. We need not address it further. *See generally*, Md.Rule 8–504 (arguments not presented in briefs will not be considered on appeal).

The trial court properly applied Maryland's *res judicata* law to appellant's complaint. Each of the three elements necessary to preclude a judgment under *res judicata* has been met. The trial court did not err.

Before concluding, we feel constrained to address appellant's argument that collateral estoppel, and not *res judicata*, was the proper preclusion law to apply to this case. Judge Moylan has recently elucidated the distinction between *res judicata* and collateral estoppel.

> *Res judicata* looks to a final *judgment* on the merits earlier entered in the same case or same cause and to the *necessary legal consequences* of that *judgment*.... A claim that has once been litigated, or that could have been litigated ... cannot, in the interests of finality and repose, be re-litigated....

> Collateral estoppel shares with *res judicata* the requirement that the earlier litigation and the later litigation be between the same parties or their privies....

> ....

> At that point, however, the two related legal doctrines part company. Collateral estoppel is concerned with the *factual* implications of an earlier litigation of a *different case* ..., whereas *res judicata* ... is concerned with the *legal* consequences of a judgment entered earlier in *the same case*.... Collateral estoppel is concerned only coincidentally with *what* happened legally; its special concern is with *why* it happened in terms of fact finding....

> ... As Judge (now Chief Judge) Wilner explained for this Court in *Klein v. Whitehead*, 40 Md.App. 1, 19 [389 A.2d 374], *cert. denied*, 283 Md. 734 (1978):

> For [collateral estoppel] to apply, we must conclude that the issues raised in this proceeding were actually litigated in the earlier actions (or that the facts necessary to resolve these issues were adjudicated in those actions).

*Burkett v. State,* 98 Md.App. 459, 464–65, 633 A.2d 902 (1993). The circuit court's conclusion in this case was based on the federal court's legal conclusions—that the Bakers' claims were not legally sufficient, and that the defendants were entitled to judgment as a matter of law.

In *MPC, Inc. v. Kenny,* 279 Md. 29, 33, 367 A.2d 486 (1977), the Court of Appeals discussed how to distinguish between *res judicata* and collateral estoppel.

> If, for example, the two causes of action are the same, and res judicata is therefore applicable, the first judgment would bar appellants ... from raising any matters which could have been decided in that case.... If, however, we are not dealing with the same cause of action, collateral estoppel rather than res judicata would apply and only those determinations of fact or issues actually litigated in the first case are conclusive in this action.

*Id.* As we discussed above, the relevant causes of action in the instant case are based on the same transaction and are, therefore, considered the same cause of action. Thus, *res judicata* is the applicable preclusive doctrine.

Appellant cites *Montana v. United States,* 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979), for the proposition that collateral estoppel, not *res judicata,* applies to actions by non-parties, because a cause of action by a non-party is, by definition, different from any preceding action. But because the trial court correctly determined that appellant was a party to the Bakers' suit for the purposes of *res judicata,* his circuit court action was not, by definition, different. Also, because privity or sameness of parties is an issue under both *res judicata* and collateral estoppel, the trial court cannot be said to have "hitched the horse to the wagon" in not considering the applicability of collateral estoppel before deciding the

privity issue. The trial court correctly applied the preclusion doctrine of *res judicata.*

JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.